693 F.2d 1235
 Fed. Sec. L. Rep. P 99,036
In re INTERNATIONAL SYSTEMS AND CONTROLS CORPORATION
SECURITIES LITIGATION.
Benjamin KOENIG, Plaintiff-Appellee,
v.
INTERNATIONAL SYSTEMS AND CONTROLS CORPORATION SECURITIES
LITIGATION, Defendant-Appellant.
 No. 81-2398.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 23, 1982.
 
 Philip P. Sudan, Jr., Houston, Tex., A. Raymond Randolph, Jr., Washington, D.C., for defendant-appellant.
 Robert A. Stull, New York City, for plaintiff-appellee.
 Lester L. Levy, New York City, for Semon.
 Carl D. Liggio, New York City, for Arthur Young & Co.
 Appeal from the United States District Court for the Southern District of Texas.
 Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 This is an appeal of a pretrial discovery order that required production of certain documents claimed to be work product. We vacate the order, 91 F.R.D. 552, and outline how the district court should proceed if called upon to reconsider the discovery of these documents.
 
 1. THE FACTS
 
 2
 Defendant International Systems and Control Corporation ("I.S.C.") is a far flung organization that conducts business throughout the Middle East. As part of this business, plaintiffs allege, I.S.C. engaged regularly in paying "commissions" or "bribes" to foreign nationals in order to secure contracts. In March 1976, the SEC sent a letter to I.S.C. requesting information regarding these "sensitive payments." In May, allegedly in an attempt to enroll in the SEC's voluntary disclosure program, I.S.C. appointed a special audit committee. This committee consisted of two independent directors who were empowered to hire the law firm of Watson, Ess, Marshall and Enggass ("W.E.") and the accounting firm of Arthur Young ("A.Y."). The committee was charged with investigating any "sensitive payments" made by I.S.C. or its subsidiaries. A.Y. was also I.S.C.'s regular auditor for the 1973-76 period. The district court found that A.Y.'s original role as an independent investigator was redefined in a letter dated May 23, 1977 as one of assisting W.E. in its investigation.
 
 
 3
 In February of 1978, the SEC served I.S.C. with a subpoena. A complaint was issued in July of that year. Ultimately a consent decree was negotiated.
 
 
 4
 As a result of the SEC subpoena and complaint, several suits against I.S.C. were filed, and then consolidated for pretrial purposes by the multidistrict panel. The suits relevant to this appeal involve Lewis and Koenig. Plaintiff Lewis filed a derivative action against the board of directors. He alleged that the defendants either (1) knowingly caused illegal payments to be made or (2) negligently failed to inquire and uncover the illegal payments. Plaintiff Koenig filed a class action against A.Y. and the directors and officers of I.S.C. Koenig alleged that A.Y. by certifying the 1976 financial statement participated in a conspiracy to defraud purchasers and sellers of I.S.C. stock.
 
 
 5
 Both Koenig and Lewis moved to compel production of A.Y.'s binders containing the information that it had developed in its special review. A.Y. was willing to produce the binders, but I.S.C. interposed claims of attorney-client privilege and work product immunity. The district court ordered that certain documents be produced and I.S.C. appeals this order.[1]
 
 2. THE DISTRICT COURT'S OPINION
 
 6
 The district court held a hearing to dispose of the privilege and work product claims. It first held that I.S.C. did not waive its claims by making certain disclosures to the SEC. This holding is not disputed. Second, the court found that all of the documents in the special review binders were within the work product immunity. This holding is clearly correct, since A.Y. was a "representative of a party," Fed.R.Civ.P. 26(b)(3), and there was a sufficient anticipation of litigation. In re Grand Jury Investigation, 599 F.2d 1224, 1228-30 (3d Cir.1979); In re Grand Jury Subpoena, 599 F.2d 504, 511 (2d Cir.1979). The district court, relying on Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) and the crime-fraud exception to the attorney-client privilege, In re Grand Jury Proceedings, 680 F.2d 1026, 1028-29 (5th Cir.1982),
 
 
 7
 order[ed] production of all material in the AY Special Review binders other than itemized documents which might reveal Watson, Ess attorney opinion or legal theories, whether such items are described as being within the attorney client privilege or as attorney work product.
 
 
 8
 Notwithstanding the ambiguity in the preceding passage, we read the district court's decision to be addressed only to the work product immunity. Earlier in its opinion, the court held that the special review binders "should be treated as work product in anticipation of litigation."[2] This appeal therefore raises two issues for our consideration. First, should Garner be extended to the work product immunity. Second, should the ongoing crime-fraud exception apply to work product.
 
 3. GARNER & WORK PRODUCT
 
 9
 Our decision in Garner dealt with the application of the attorney-client privilege in the context of corporate-shareholder litigation. The plaintiffs filed a class action alleging common-law and securities fraud. They also filed a derivative suit on behalf of the corporation against certain individual defendants.[3] The issue on appeal was whether the corporation could assert the privilege against its shareholders. We engaged in a balancing test, holding that
 
 
 10
 The corporation is not barred from asserting it [the privilege] merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the shareholders to show cause why it should not be invoked in the particular instance.
 
 
 11
 430 F.2d at 1103-04 (footnotes omitted).
 
 
 12
 The court's reasoning was based on the nature of the corporation. Management operates the corporation for the shareholders. There is a "mutuality of interest" between shareholders and management. Id. at 1101.
 
 
 13
 In issuing the order under review the district court apparently applied Garner without analyzing whether the differences in work product immunity and attorney-client privilege justify a different result. Our view of Garner and Fed.R.Civ.P. 26(b)(3) lead us to the conclusion that Garner should not be so extended.
 
 
 14
 Garner's rationale indicates that it was not intended to apply to work product. Garner is premised upon the "mutuality of interest" between shareholder and management. This "mutuality of interest" may exist for the attorney-client privilege. But once there is sufficient anticipation of litigation to trigger the work product immunity, we think this mutuality is destroyed. To hold otherwise would be to ignore modern corporate realities.[4] The work product privilege is based on the existence of an adversarial relationship, not the quasi-fiduciary relationship analogized to in Garner. The joint attorney analogy discussed by the Garner court also does not apply to work product. Two parties anticipating litigation against each other do not have a common interest. It is not reasonable to indulge in the fiction that counsel, hired by management, is also constructively hired by the same party counsel is expected to defend against.
 
 
 15
 The terms of disclosure of work product are spelled out in the Federal Rules. Following the discussion of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), Rule 26(b)(3) was adopted in 1970. The rule states that work product will be orderedonly upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
 
 
 16
 The plain language of the rule is inconsistent with Garner. In adopting the rule, a good cause standard was rejected in favor of the substantial need/undue hardship test. 8 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2023 (1970).[5] Since the good cause standard is the standard in Garner, it follows that Garner should not apply to work product discovery.
 
 
 17
 4. RULE 26(b)(3): SUBSTANTIAL NEED & UNDUE HARDSHIP
 
 
 18
 The district court did not make the findings of substantial need and undue hardship required by the rule. Upon remand it is still free to determine if the plaintiffs are entitled to production of the A.Y. special review binders.
 
 
 19
 The district court, of course, has broad discretion to determine whether an adequate showing has been made. We point out several factors that relate to the inquiry.
 
 
 20
 We first note that these materials are not the "mental impressions, conclusions, opinions or legal theories of an attorney." Fed.R.Civ.P. 26(b)(3). Some courts have provided an almost absolute protection for such materials. In re Murphy, 560 F.2d 326, 336 (8th Cir.1977); In re Doe, 662 F.2d 1073, 1080 (4th Cir.1981), cert. denied, --- U.S. ----, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Since these documents are not "opinion work product," the plaintiffs do not have to make the even higher showing required.
 
 
 21
 a. Undue Hardship
 
 
 22
 I.S.C. asserts that since the information sought by plaintiffs here is available through normal discovery procedures, production of work product should be denied.[6] This argument goes to whether the plaintiffs can demonstrate "undue hardship" in obtaining the materials from other sources.
 
 
 23
 We agree with the general proposition that discovery of work product will be denied if a party can obtain the information he seeks by deposition. 8 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2025 n. 72 (1970). We know that the work product immunity protects only the documents themselves and not the underlying facts.[7] Plaintiff may however, demonstrate undue hardship if the witness cannot recall the events in question, or is unavailable.[8] Xerox v. I.B.M. Corp., 64 F.R.D. 367, 382 (S.D.N.Y.1974). In re Grand Jury Investigation, 599 F.2d at 1231-32. But broad unsubstantiated assertions of unavailability or faulty memory are not sufficient. See United States v. Chatham City Corp., 72 F.R.D. 640, 644 (S.D.Ga.1976). On the record before us, plaintiff has only taken one deposition. We think a more particularized showing must be made before production can be ordered by the district court.[9] Xerox Corp. v. I.B.M. Corp., 79 F.R.D. 7 (S.D.N.Y.1977) (production of interview notes covering 37 employees ordered when 33 were deposed and could not remember the events of seven years earlier).
 
 
 24
 Another element that the district court may consider in determining undue hardship is expense. We agree that in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product. Chatham City, 72 F.R.D. at 644. But there have been cases in which unusual expense has constituted undue hardship. Allen v. Denver-Chicago Trucking Co., 32 F.R.D. 616, 617 (W.D.Mo.1963) (decided under former good cause standard). In this case, many of the persons involved may be in Canada, England or the Middle East. Also, to evaluate A.Y.'s regular audit papers and I.S.C.'s financial information and duplicate the information contained in the special review binders could cost the plaintiffs an inordinate amount. The district court found that this investigation cost I.S.C. $1.5 million. We note, however, that plaintiff may be able to discover much of this information at much lower expense to itself, and that plaintiff is only inquiring into certain specific transactions, whereas the special review naturally covered a broader range of activities. The cost to plaintiff may be inquired into as a factor in the undue hardship analysis.
 
 
 25
 b. Substantial Need
 
 
 26
 The second prong of the Rule 26(b)(3) test is "substantial need for the materials." Some cases have found substantial need by emphasizing the importance of the documents themselves. One common justification for discovery is the claim which relates to the opposite party's knowledge that can only be shown by the documents themselves. Bird v. Penn Central Co., 61 F.R.D. 43 (E.D.Pa.1973); Kearney & Trecker Corp. v. Giddings & Lewis, Inc., 296 F.Supp. 979, 983 (E.D.Wis.1969). In Bird, the plaintiff insurance companies sued to rescind certain policies. Defendants interposed the defense of laches. Plaintiff responded to this with a claim of advice of counsel. The court said
 
 
 27
 Because the nature of this defense concerns knowledge, legal theories and conclusions of plaintiffs' attorneys charged with claim investigation, ... [are] discoverable ....
 
 
 28
 61 F.R.D. at 47.[10] The district court here stated that A.Y.'s certification of the 1976 financial statements was an essential element of plaintiff's fraud claims. A.Y.'s knowledge as to I.S.C.'s "sensitive payments" prior to the 1976 certification could be grounds for a finding of substantial need under these cases. Nevertheless, we think that the district court should determine if A.Y.'s knowledge can be discovered without the work product--i.e. by deposition testimony or through the regular audit information.
 
 
 29
 We note that ultimately, these findings are part of a balancing test. The district court should weigh all the factors in deciding this issue. This balance will not be overturned absent an abuse of discretion.
 
 5. THE CRIME-FRAUD EXCEPTION
 
 30
 a. Exception Applies
 
 
 31
 The second issue this appeal raises is the applicability of the ongoing crimefraud exception to the work-product immunity. This exception is firmly entrenched in the common law of attorney-client privilege. The privilege exists to encourage full disclosure of pertinent information by clients to their attorneys. Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Its protection extends to past criminal violations. The rationale for this is that the client, given the nature of our adversary system, has a legitimate interest in securing informed representation without fear of forced disclosure. However, the client has no legitimate interest in seeking legal advice in planning future criminal activities. The crime-fraud exception therefore comes into play if "the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." In re Murphy, 560 F.2d at 337 (citations omitted).
 
 
 32
 Every court of appeals that has addressed the crime-fraud exception's application to work product has concluded that it does apply. E.g. In re John Doe Corp., 675 F.2d 482, 492 (2d Cir.1982); In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir.1979). While these cases have arisen in the grand jury context, we find them to be persuasive. The work-product immunity was first recognized in Hickman. Its primary purpose is to protect the "public policy underlying the orderly prosecution and defense of legal claims." 329 U.S. at 510, 67 S.Ct. at 393. It protects both client and attorney's interest in preventing disclosures about the case.
 
 
 33
 When the case being prepared involves the client's ongoing fraud, however, we see no reason to afford the client the benefit of this doctrine. It is only the "rightful interests" of the client that the work product doctrine was designed to protect.
 
 
 34
 (Citations omitted). In re Special September 1978 Grand Jury, 640 F.2d 49, 63 (7th Cir.1980). We therefore hold that the ongoing crime-fraud exception applies to work product.
 
 
 35
 b. Prima Facie Predicate
 
 
 36
 Our inquiry does not stop here. In order to invoke this exception, the party seeking to breach the walls of privilege must make out a prima facie case. In In re Grand Jury Proceedings in Matter of Fine, 641 F.2d 199, 203 (5th Cir.1981), we approved of the definition of a prima facie case contained in Black's Law Dictionary (4th ed. 1968):
 
 
 37
 [evidence] [s]uch as will suffice until contradicted and overcome by other evidence .... [a] case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.
 
 
 38
 The district court recognized this requirement and stated that the plaintiffs had made a prima facie case of fraud. We find nothing in the record, however, of fraud except the plaintiff's allegations. While the pleadings in this case are unusually detailed, they are not evidence to make a prima facie case. See In re Grand Jury Investigation, 599 F.2d at 1232 (naked assertion of a corporate cover-up insufficient to overcome work product).
 
 
 39
 The courts have evolved a two element test for a prima facie showing:
 
 
 40
 First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product under subpoena and the prima facie violation.
 
 
 41
 (Footnotes omitted). In re Sealed Case, 676 F.2d 793, 814-15 (D.C.Cir.1982); In re Grand Jury Proceedings, 604 F.2d at 803.[11] This test has evolved in the grand jury context.
 
 
 42
 Judge Wright, in In re Sealed Case explained this test in depth. He stated that it must first be shown that the client was engaged in ongoing fraudulent activity when the work product was sought or produced. 676 F.2d at 815. Then, the work product must reasonably relate to the fraudulent activity. Id.
 
 
 43
 c. Specific Intent of Client
 
 
 44
 Judge Wright, however, would dispense with proof of specific intent of the client. In re Sealed Case was one where the corporation withheld documents from an investigation of crime by a grand jury. The reasons given by Judge Wright for allowing discovery without a showing of specific intent, to further fraud or crime by the consultation of an attorney or preparation of a document, do not apply in the present case.
 
 
 45
 Here the plaintiffs allege fraud in the company paying bribes and failing to report them to shareholders. It seems clear that the plaintiffs will be able to show that illegal payments were made and not reported. Since this was not reported officially until 1978, it could be argued that a prima facie case of ongoing fraud was thereby established. The special review binders clearly have a reasonable relation to this ongoing fraud. Yet it may well be that the purpose in commencing the special review was entirely pure. In the modern corporate world with multiple subsidiaries and hundreds of employees, shady practices may occur without the directors' and officers' knowledge.[12] An attempt by the management to investigate past and present questionable practices should not be discouraged by guaranteed disclosure. In the present case the court should require some proof of specific intent by management in the development of the work product documents.[13]
 
 
 46
 The order is VACATED.
 
 
 
 [1]
 We have jurisdiction of this appeal. Normally a discovery order is not appealable. The traditional avenue for seeking interlocutory review is a contempt citation. However, where the document to be produced is in the possession of a third party, the person asserting the privilege may seek immediate review since he cannot compel the third party to risk a contempt citation. Velsicol Chemical Corp. v. Parsons, 561 F.2d 671, 674 (7th Cir.1977), cert. denied, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); see Branch v. Phillips Petroleum Co., 638 F.2d 873, 878 (5th Cir.1981) (governmental privilege claims); In re Grand Jury Proceedings in Matter of Fine, 641 F.2d 199 (5th Cir.1981) (order compelling attorney to testify before a grand jury). Cf. Garner v. Wolfinbarger, 430 F.2d 1093, 1096-97 (5th Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) (denial of privilege properly certified under 28 U.S.C. Sec. 1292(b))
 
 
 [2]
 Additional support for this reading of the district court's opinion is in its finding that it was not until May 1977 that A.Y.'s role was limited to assistance of W.E. While accounting services ancillary to legal advice may fall within the attorney-client privilege, United States v. Davis, 636 F.2d 1028, 1043 n. 17 (5th Cir.), cert. denied, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), since A.Y. acted independently of W.E. prior to May 1977 its services can hardly be said to be ancillary to W.E.'s. Thus, the only ground for finding these documents privileged is the work product immunity. With regard to documents prepared after this period, we note that the district court stated that it ordered production of "accounting worksheets which were not indisputably prepared at the request or under the direction of the outside counsel." The materials ordered produced covering the period after May 1977 could therefore only be work product
 
 
 [3]
 Appellant argues that Garner only dealt with derivative suits by present shareholders. He then argues that plaintiff Lewis could not join plaintiff Koenig's Fed.R.Civ.P. 34 motion, since A.Y. is not a party in Lewis' suit, and the district court had not entered a formal order of consolidation. Under its interpretation of Garner Koenig's class action suit would not be covered under Garner even if this were an attorney-client privilege case
 This argument fails for several reasons. First, Garner did involve a class action claim. Also, even if plaintiff Koenig is not presently a shareholder, at the time in question he was, and the defendants owed him duties in their management of the corporation. In addition, we think that plaintiff Lewis' claim was properly considered by the district court. The cases were ordered consolidated for pretrial purposes and the district court treated them as such. Lewis could clearly have filed a Fed.R.Civ.P. 34(c) motion to compel.
 
 
 [4]
 Courts dealing with "sensitive payments" have generally held that there was sufficient anticipation of litigation. The case before us is an excellent example of the modern phenomena of shareholder suits. From the moment management learned of the SEC investigation, it could almost count on some form of shareholder's derivative or class action suit
 
 
 [5]
 The 1967 proposed amendments to the civil rules, proposed rule 26(b)(3), 43 F.R.D. 211, 225 (1967), stated that work product was discoverable "only upon a showing of good cause therefor." This standard was subjected to heavy criticism, in part because the good cause standard had proved unworkable in Rule 34. Also, it was pointed out that good cause had been interpreted as meaning no more than relevance, and this was not sufficient protection for work product. Freund, Work Product, 45 F.R.D. 479, 495 (1967)
 
 
 [6]
 Specifically, I.S.C. states that all of the persons interviewed during the course of the special review are available for deposition. In addition, he points out that all A.Y. regular audit work papers and I.S.C.'s financial records have been made available. Only the special review work papers have not been produced
 
 
 [7]
 In the deposition of Robert Teague, we note that plaintiff was prevented from questioning Teague about the facts involving the special review by I.S.C.'s assertions of privilege. This was improper. Plaintiff is entitled to learn the facts underlying the special review binders
 
 
 [8]
 Plaintiff claims that many of the transactions involved foreign nationals who will be unavailable for deposition. I.S.C. argues that these persons were not interviewed during the course of the special review and that the witness' unavailability is irrelevant to the production of the papers. We think this is a relevancy question that should be resolved by the district court on remand
 
 
 [9]
 We note that in Teague's deposition, he repeatedly stated that he had trouble remembering the events in question. Similar testimony by others involved in the conduct of the investigation, particularly if they were in positions of responsibility would satisfy the requirement of substantial need
 
 
 [10]
 E.g. Kirkland v. Morton Salt Co., 46 F.R.D. 28 (N.D.Ga.1968) (in malicious prosecution suit, plaintiff was entitled to information regarding payment by plaintiff prior to defendant's garnishment suit to show defendant's knowledge that suit was groundless); Shapiro v. Allstate Insur. Co., 44 F.R.D. 429 (E.D.Pa.1968) (in insured's suit for bad faith handling of claim, recommendation of counsel ordered produced to show whether defendant relied on a totally groundless evaluation of the claim). But cf. Augenti v. Cappellini, 84 F.R.D. 73 (M.D.Pa.1979)
 
 
 [11]
 In In re John Doe, 675 F.2d at 492, the court used the term "probable cause" for a showing on the criminality issue. We think that while the courts phraseology is different, its approach was the same. It found evidence of an ongoing fraud and then examined the documents to make sure that they related to that crime. See In re Murphy, 560 F.2d at 338 (if opinion work product close relationship must be shown)
 
 
 [12]
 Indeed, plaintiff Lewis here has alleged that the directors negligently failed to discover and prevent these "sensitive payments."
 
 
 [13]
 Such intent could be shown for example if a member of management knew or had reason to know of specific illegal payments, but did not disclose them when the investigation commenced. Another way might be to show discrepancies between what the investigators were told and the ultimate facts. For example, one way to construe this case is that A.Y. was hired by I.S.C. to provide I.S.C. with a clean bill of health while concealing the true extent of the illegal payments from A.Y. Thus, discrepancies between figures could support an inference of specific intent