**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**
No. 95-31171
(Summary Calendar)

BILLY KING,

                              Plaintiff - Appellant,

versus


ODECO INCORPORATED, ET AL,

                              Defendants,

                    and

MURPHY EXPLORATION AND PRODUCTION COMPANY,

                              Defendant - Appellee,


THE GRAY INSURANCE COMPANY INCORPORATED and
LAFITTE WELDING WORKS INCORPORATED

                              Intervenors - Appellants.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(94-CV-2117 "C")
_____

January 8, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

---

   [*]   Pursuant to Local Rule 47.5, the Court has determined
that this opinion should not be published and is not precedent

Plaintiff Billy King appeals the district court's judgment in favor of defendant Murphy Exploration and Production Company ("Murphy") dismissing King's complaint with prejudice. We affirm.

I

Murphy owns and operates an offshore oil production platform called OCEAN 66 ("OCEAN 66" or "the facility"). In 1993, Murphy determined that a fuel tank at the facility leaked and needed repairs. After a bidding process, Murphy awarded this work to Lafitte Welding Works ("Lafitte"). Lafitte sent a seven-man crew to the facility, and it completed the job in ten days.

King was a member of the Lafitte repair crew, and was employed as a "rigger." To fix the fuel tank, the crew moved its welding equipment through the mud pump room to the bulk barite room. When the crew completed the repairs, it moved the equipment to another area. However, after testing the fuel tank, the crew discovered that the tank still had a number of leaks. King was told to move the welding equipment back into the bulk barite room so the crew could finish the job. Part of this equipment included welding leads, which are thick cables that supply electricity for welding. The welding leads were in sections and too heavy to be carried in a bundle or coil.

After hauling one section of lead into the bulk barite room,

except under the limited circumstances set forth in Local Rule 47.5.4.

King returned through the mud pump room to fetch another one. At that point, he alleges that the tip of his boot caught under the edge of a steel grating, and he toppled forward. As he fell, King claims that he saw a vertical pipe in his way and, to avoid hitting it face-first, he pirouetted almost 180 degrees, striking his neck and back against the pipe.

King then finished the task of positioning the welding leads. Later, he reported the accident to Murphy.

The grating on which King purportedly tripped was an old one that had sunk in the middle, causing the edges to protrude up by as much as an inch. It was in an area of the mud pump room in which people would normally walk. King testified that the grating was clearly visible, and that he had passed over it a number of times.

The plaintiff sued Murphy and Odeco, Inc., the former owner of OCEAN 66, in state court in Louisiana.[2] After Murphy removed the suit to the federal district court, Lafitte and The Gray Insurance Company ("Gray") intervened as plaintiffs. The district court bifurcated the issues of liability and damages. After a bench trial on liability, the district court entered judgment on behalf of Murphy, dismissing the claims of King, Lafitte, and Gray.

On appeal, King argues that the district court erred by refusing to require production of photographs taken by Murphy of the mud pump room, by concluding that the grating did not pose an

---

[2] King later amended his complaint to delete his claims against Odeco.

unreasonable danger, and by making an alternative finding that the accident was solely caused by King's negligence. Also, Lafitte and Gray contend that the district court erred by making a second alternative finding that the condition of the grating did not constitute a "ruin" under Louisiana law.

## II

King avers that the district court mistakenly declined to order Murphy to produce photographs it took of the mud pump room. We review district court rulings on discovery matters for abuse of discretion. *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989).

King twice demanded production of any photos. More than a year before trial, he requested that Murphy produce "any and all photographs" of the accident site. Then, having learned that such photos existed, he filed an *in limine* motion on the day of trial for their production. The district court denied the motion, determining that the photos were protected from disclosure by the work product doctrine.

As a preliminary matter, King suggests that Murphy was precluded from contesting his *in limine* motion for discovery of the photos because Murphy did not object to his initial request to produce "any and all photographs." However, according to Murphy, its employee did not take the photos until less than a month before trial. Murphy claims that, because the photos did not exist at the

-4-

time King made his initial request, it had no basis for objecting to the request at that time. King does not dispute this. Hence, his argument has no merit.

King next contends that, even if Murphy was entitled to object to his *in limine* motion, the district court should not have permitted Murphy to shield the photos from discovery under the work product doctrine. The work product doctrine protects that which an attorney causes to be created in anticipation of litigation. *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), *cert. denied*, 466 U.S. 944, 104 S. Ct. 1927, 80 L. Ed. 2d 473 (1984). The party who asserts work product protection for an item sought to be discovered has the burden of establishing that it was prepared in anticipation of litigation. If the party can satisfy that requirement, the burden shifts to the party seeking discovery to overcome that protection. *Hickman v. Taylor*, 329 U.S. 495, 511-12, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947). To overcome work product protection, a party must show that (1) he has "substantial need of the materials in the preparation of [his] case" and (2) that he "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED. R. CIV. P. 26(b)(3).

Murphy asserts that its counsel arranged to have a Murphy employee take the photographs shortly before trial. Murphy claims that this employee was not a witness during the trial, and that the

company did not show the photos to any witness. Murphy also maintains that it never introduced the photos into evidence. King does not dispute any of these contentions. Accordingly, we find that the district court did not abuse its discretion in finding that the photographs are work product material.

Parties commonly argue that they have substantial need for discovery of work product material because it contains information that can only be found in the material itself. *Koenig v. International Sys. and Controls Corp. Secs. Litig.* (*In re Int'l Sys. and Controls Corp. Secs. Litig.*), 693 F.2d 1235, 1241 (5th Cir. 1982). The "[e]xistence of a viable alternative to invading work product, will, in most situations . . . negate any substantial need." *Fisher v. National R.R. Passenger Corp.*, 152 F.R.D. 145, 151-52 (S.D. Ind. 1993). One readily available source is the plaintiff's own knowledge and testimony. *Id.* Another is deposition testimony. *In re International Systems*, 693 F.2d at 1241.

King fails to contend that the photos contain information that he could not have obtained elsewhere. His argument that he had substantial need for the photographs is entirely conclusory; he merely claims that the photos were "crucial evidence" and that they would have had a "bearing . . . on the ultimate liability question in this case." In the absence of a statement of exactly what information King requires from the photos, it is difficult to

determine if he has substantial need for the photos. Even if King had made an appropriate legal argument, though, he would still fail to meet his burden of showing substantial need. For instance, in lieu of attempting to compel production of the photos, King could have relied on his own knowledge of the grating and the layout of the mud pump room. Moreover, he could also have obtained this information from deposition testimony. Therefore, King cannot show substantial need for the photos.

King also suggests that he would have faced undue hardship in acquiring the substantial equivalent of the photos by means other than attempting to compel their production. While he concedes that Murphy gave him permission to inspect OCEAN 66, he points out that it would have been costly for him to fly out or hire a vessel to take him there.

A plaintiff can claim undue hardship if he cannot obtain the information he seeks by deposition. *Id.* at 1240. For instance, if the plaintiff makes a particularized showing that a witness cannot recall the event in question or is unavailable, this may constitute undue hardship. *Id.* Another aspect of undue hardship is unusual expense. *Id.* at 1241. The undue hardship test, though, is generally not satisfied merely by the expense of obtaining materials. *Pine Top Ins. Co. v. Alexander & Alexander Servs., Inc.*, No. 85 Civ. 9860, 1991 WL 221061, at *2 (S.D.N.Y. Oct. 7, 1991). King does not argue that he was unable to obtain the

information in the photos by deposition. He also does not present any evidence that he inquired into the cost of visiting OCEAN 66 before the trial or what this cost would have been. Hence, we find that he has failed to show undue hardship.

Accordingly, we determine that the district court did not abuse its discretion in refusing to order Murphy to produce its photos of the mud pump room.

III

King next contends that the district court erred by determining that the grating did not pose an unreasonable danger. We review a district court's findings of fact for clear error, but review issues of law *de novo*. *C & B Sales & Serv., Inc. v. McDonald*, 95 F.3d 1308, 1312 (5th Cir. 1996).

In *Oster v. Department of Transp. & Development*, 582 So.2d 1285 (La. 1991), the Louisiana Supreme Court summarized the test under Louisiana law to determine negligence and strict liability where the plaintiff alleges damages resulting from a dangerous condition on land. It noted that under either theory of liability, one of the elements the plaintiff must prove is that "the thing [that caused the damage] contained a 'defect' (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff)." *Id.* at 1288. The court stated that "the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove

the defendant were aware of the existence of the 'defect' under a strict liability theory." *Id.* (footnote omitted). "Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant." *Id.*

In determining whether the condition was unreasonably dangerous, the Louisiana Supreme Court ruled, a court cannot conduct a mechanical analysis but, rather, must consider a myriad of considerations. *Id.* "In addition to the likelihood and magnitude of the risk and the utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident." *Id.* at 1289.

The district court conducted the appropriate review under *Oster*. In examining whether or not the grating was unreasonably dangerous, it made the following findings: (1) King and his fellow laborers were working as a specialized welding repair crew under contract to repair a fuel tank on an offshore facility; (2) the repair area was not in service as a work area on the facility, and was not subject to daily use; (3) King and his superintendent was aware of the condition of the grating and the potential hazard; (4) the lighting in the room was adequate for its purpose; (5) no member of the crew, besides King, complained about tripping over

the grating, despite the fact that the repair crew traversed the room frequently during the course of the job; (6) the grating was not designed to be welded in place, but was intended to be removable in order to provide access to the equipment below; (7) the surface differential of the grating was an inch or less; (8) King and his superintendent testified that the condition did not pose any risk at all to a worker who was conscious of his footing; and (9) King and his fellow laborers had encountered inconveniences far more serious than the grating in the mud pump room in order to carry out their work.

We determine that none of these findings is clearly erroneous. Moreover, we hold the district court did not err in considering these findings sufficient to conclude that the grating was not an unreasonably dangerous condition.

IV

Because we determine that the judgment of the district court is correct, we need not consider King's challenge to the district court's alternative finding that King's own negligence was the cause of the accident or Lafitte and Gray's challenge to the district court's second alternative finding that the grating does not constitute a "ruin" under Louisiana law.

V

For the foregoing reasons, we AFFIRM the judgment of the district court.

-10-