**Mary MILLER, Plaintiff,**

v.

**FEDERAL EXPRESS CORP., Defendant.**

No. 98–2290DV.

United States District Court,
W.D. Tennessee,
Western Division.

May 11, 1999.

Donald A. Donati, Memphis, Tennessee, for plaintiff.

James R. Mulroy, II, Mary Jane Palmer, Memphis, Tennessee, Thomas H. Lawrence, Memphis, Tennessee, for defendant.

## ORDER ON PLAINTIFF'S DISCOVERY MOTIONS

VESCOVO, United States Magistrate Judge.

Plaintiff, Mary Miller, a black female, brought this Title VII action against defendant, Federal Express Corp., alleging that she was discriminated against on the basis of her race. Specifically, plaintiff contends that after racial harassment charges were leveled at her by a fellow employee, she was disciplined more harshly than other similarly situated white managers. On March 22, 1999, plaintiff filed a motion to compel defendant to respond to several of her discovery requests, to compel the production of Tom Nottingham for deposition, to compel the re-opening of the deposition of Henry Bartosch, and to impose sanctions upon defendant including attorney's fees and reasonable expenses incurred as a result of this motion.

This motion was referred to the United States Magistrate Judge for determination. For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND

Plaintiff is an operations manager in defendant's Memphis Hub and has been employed by defendant since November 25, 1981. On June 10, 1996, plaintiff was allegedly overheard boisterously making derisive comments about Asians in the presence of other employees. Specifically, it is alleged that plaintiff used the terms "ching chang, ying yang" and referred to an Asian shopkeeper as stupid while mimicking his pronunciation of the word "dollar." Fellow manager, Paul Go, an Asian–American, overheard these comments and was offended. After another employee told plaintiff that Go appeared offended, plaintiff approached Go and tried to explain. The end result of that conversation was plaintiff's assertion that if Go was offended by what was said then that was Go's problem because she was not going to change the way she talked for anyone.

On June 11, 1996, Go submitted an internal complaint to his Personnel Representative, Dee Cadden, alleging racial harassment on the part of plaintiff. As is standard company procedure, defendant investigated the charge. Plaintiff is alleged to have been extremely uncooperative in conjunction with defendant's investigation into Go's charge. Plaintiff was loud, interruptive, and refused to disclose details such as the names of the individuals present in her cubicle at the time. Further, plaintiff offered contradictory explanations for her behavior. At one point, plaintiff asserted that what Go overheard was a private conversation about her trip to Korea; later, plaintiff claimed that Go must have heard her at a time when she was filled with the spirit and speaking in tongues.[1] Plaintiff flatly refused to apologize for her statements.

On July 26, 1996, plaintiff was suspended. During the period of suspension, the Personnel Department recommended that plaintiff be terminated, and the Employee Relations Department concurred. In accordance with these recommendations, Henry Bartosch, plaintiff's director, instructed Manager Brad Ammer to terminate plaintiff's employment which he did on August 1, 1996. The basis for the termination was plaintiff's "violation of the Acceptable Conduct Policy (2–5)/lead-

---

1. Plaintiff has not alleged religious discrimina- tion.

ership failure." Plaintiff's "leadership failure" derived from the combination of her racially insensitive remarks, her unwillingness to apologize, and her uncooperative, recalcitrant behavior during the investigation. In response to the termination decision, on August 2, 1996, plaintiff filed an internal grievance pursuant to defendant's Guaranteed Fair Treatment Procedure/Equal Employment Opportunity (GFTP/EEO) process. On August 7, 1996, plaintiff also filed a charge of racial discrimination with the EEOC contesting her suspension and termination.[2]

On August 13, 1996, the Legal Department informed Employee Relations that an EEOC charge had been filed by plaintiff and instructed Employee Relations to begin an investigation into plaintiff's claim. Employee Relations designated Edith Kelly–Green as the individual heading up the investigation into plaintiff's claims that she had been discriminated against. Upon completion of her investigation, Kelly–Green sent her report to the Legal Department seeking its review and approval prior to release. As a result of Kelly–Green's investigation, plaintiff's termination was overturned and, on February 14, 1997, she was reinstated with full back pay. Plaintiff received reduced discipline in the form of the five-day suspension previously imposed between July 26 and August 1 as well as a warning letter. Plaintiff appealed the reduced discipline to the defendant's appeals board, but the reduced discipline decision was upheld.

On December 31, 1997, plaintiff received her notice of right to sue from the EEOC. Plaintiff filed suit on March 30, 1998 alleging that she had been the victim of unlawful discrimination on the basis of race in violation of Title VII and provisions of the Tennessee Human Rights Act.[3] Essentially, plaintiff argues that she received harsher discipline from defendant than other similarly situated white employees.

Plaintiff seeks the court's intervention in resolving a number of outstanding discovery disputes between the parties. Specifically, plaintiff seeks: (1) an order compelling defendant to respond to three interrogatories and one request for production contained in plaintiff's First Set of Interrogatories and Requests for Production of Documents, (2) an order compelling defendant to respond to its Second Set of Interrogatories and Requests for Production of Documents, (3) an order determining whether defendant is entitled to claim attorney-client privilege and/or work product protection with regard to the documents listed in defendant's Second Amended Privilege Log, (4) an order requiring defendant to produce Tom Nottingham for deposition in Memphis, (5) an order allowing plaintiff to re-open the deposition of Henry Bartosch, and (6) an order awarding sanctions to plaintiff, including the assessment of reasonable attorney's fees and expenses incurred in filing this motion, for what it labels as defendant's gamesmanship and abusive discovery tactics.

## II. ANALYSIS

A. *Plaintiff's First Set of Interrogatories and Requests for Production of Documents*

This portion of plaintiff's motion to compel seeks responses to three interrogatories and

---

**2.** Plaintiff's EEOC filing reads in full:

> On July 26, 1996, I was placed on investigative suspension for alleged violation of the Acceptable Conduct Policy. On August 1, 1996, I was discharged from my position of Operations Manager. I had been employed with the above named employer since November 25, 1981. The reasons given for the discharged (sic) were making inappropriate comments in front of other employees in the workplace, refusing to acknowledge that my conduct was inappropriate when confronted by another member of management and displaying unprofessional,

> uncooperative and disruptive conduct during the investigation interview.
> I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, because I believe if I had been White I would not have been suspended nor discharged. White Managers are not treated in this manner.
> (Exh. A to Def.Resp. to Mot. to Compel.)

**3.** Plaintiff also alleged that she had been discriminated against on the basis of sex although her sex discrimination claim was not raised in her EEOC filing.

one request for production. As to each of the requested interrogatories, defendant objected on grounds that they were overbroad. Defendant objected to the production request on the grounds that it was overbroad and unduly burdensome.[4]

### 1. *Interrogatories 17, 19, and 20*

Interrogatory 17 asks defendant to "identify all managers and supervisors at the Memphis Hub who, since January 1, 1993, have received any form of discipline related to either 'conduct' or 'employee relations' issues." This interrogatory also asks that defendant provide the name, race, and job title of each manager/supervisor, the date of disciplinary action, a description of the action taken, and whether any appeal was filed and the final disposition of any such appeal. Interrogatory 19 asks defendant to "identify each and every person in management at the Memphis Hub who filed internal EEO grievances and who subsequently received favorable outcomes to said since January 1, 1993." Interrogatory 20 asks defendant to "identify each and every person listed in Interrogatory No. 19 who have (sic) been promoted since or after the date of filing an internal EEO grievance."

Defendant's objection to these interrogatories as being overly broad is two-fold. First, defendant argues that these interrogatories request information concerning employees who are not "similarly situated" to plaintiff. Second, defendant protests that these interrogatories are excessive in scope as to time. On the timing issue, defendant submits a November 30, 1995 memorandum from VP of Operations William Logue and VP of Operations Kenneth Willoughby which facially establishes that defendant initiated a new disciplinary policy as of that date.[5] Thus, defendant argues any disciplinary actions against management taken prior to November 30, 1995 would not be relevant because a different disciplinary standard applied.

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Fed.R.Civ.P. 26(b)(1). Relevancy for discovery purposes is extremely broad. The information sought need not be admissible in court in order to be relevant. Rather, the relevancy burden is met if the party can show that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Nevertheless, discovery does have "ultimate and necessary boundaries,'" *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)), and "'it is well established that the scope of discovery is within the sound discretion of the trial court.'" *Coleman v. American Red Cross,* 23 F.3d 1091, 1096 (6th Cir.1994) (quoting *United States v. Guy,* 978 F.2d 934, 938 (6th Cir.1992)).

In this Title VII disparate treatment case, information concerning the treatment of comparable employees is doubtlessly relevant to a plaintiff's claim that she received harsher discipline on account of her race. However, for an employee to be considered comparable or "similarly situated" to the plaintiff, "the plaintiff and the employee must be similar in 'all of the relevant aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 351 (6th Cir.1998). In the context of an allegation of disciplinary discrimination, the comparables to be similarly situated "must have dealt with the same

---

4. Defendant also initially objected to the interrogatories and production request on grounds that the information sought invaded the privacy of third parties. Defendant's objections concerning privacy and confidentiality issues have been withdrawn in the light of the parties agreement concerning the entry of a protective order as to such disclosures.

5. The Logue/Willoughby memo explains:
 In a recent GFTP/EEO process investigation, it has shown (sic) that in many cases, discipline of management has been inconsistent and many times too lenient.
 Please be advised that in the future a more aggressive approach will be taken in disciplinary measures of management for leadership failure and egregious performance problems. Prior to issuing any management discipline, please be sure that you review with Personnel to insure that we are being consistent on a hub-wide basis.
 (Exh. B to Def.Resp. to Mot. to Compel.)

supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). This is not to say, however, that another employee's situation must be identical to serve as a comparable. *Ercegovich,* 154 F.3d at 353.

Plaintiff is not similarly situated to all management-level employees at the Hub who were themselves subject to discipline for "conduct" or "employee relations" issues or who filed internal EEO grievances. In this case, only those management-level employees at the Hub who received disciplinary sanctions as a result of violations of the "Acceptable Conduct Policy/leadership failure" and who later failed to apologize for their behavior and failed to cooperate with defendant's internal investigation would be "similar in 'all of the relevant aspects' " to plaintiff for purposes of admissibility at trial.[6] Similarly, management-level employees sanctioned for disciplinary reasons prior to November 30, 1995 would not be similarly situated to plaintiff because they were not subject to the disciplinary standard in place after circulation of the Logue/Willoughby memorandum. Consequently, Interrogatories 17, 19, and 20, as currently formulated, are overbroad.

■ Although overbroad, these interrogatories arguably could lead to the discovery of other admissible evidence by revealing a smaller set of managers who were disciplined after November 30, 1995 for leadership failure and who also failed to apologize and to cooperate in the investigation. Nevertheless, the need for broad discovery should not necessitate unreasonably broad discovery requests. *Cf. Scales v. J.C. Bradford and Co.,* 925 F.2d 901, 906 (6th Cir.1991) (noting in a Title VII disparate treatment case that the "desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights" of the parties). Plaintiff's need for relevant

disciplinary information can be adequately addressed by limiting Interrogatories 17, 19, and 20 to those managers in Director Henry Bartosch's area, if any, who were disciplined between November 30, 1995 and February 14, 1997 for "violation of the Acceptable Conduct Policy/leadership failure." Although these individuals may not be "similar in all relevant respects" such that information concerning them would be admissible at trial, the information about managers who were disciplined for leadership failure could lead to additional information about their cooperation during the investigative process which may ultimately lead to admissible information.

### 2. *Request for Production of Documents 14*

This production request seeks the personnel records of thirteen management-level employees of defendant.[7] Defendant has objected on grounds that this request is unduly burdensome, irrelevant, and overbroad because it seeks information as to employees who are not "similarly situated" to plaintiff.

■ Personnel records, because of the privacy interests involved, should not be ordered produced except upon a compelling showing of relevance. *See Onwuka v. Federal Express,* 178 F.R.D. 508, 516 (D.Minn. 1997). In her initial brief, plaintiff failed to particularly identify the relevance of the personnel files sought, but in her reply brief, plaintiff explains that Ammer, Bartosch, Logue, Kelly, and Sutherland participated in the decision to fire plaintiff and therefore any complaints against them of prior race discrimination or disciplinary actions would lead to relevant information. Plaintiff believes others—Paul Hofer, Margaret Trainer, Larry Ratliff, Buck Alexander, David Worley, and Randy Culbreth—have engaged in racial slurs. However, plaintiff has presented no information, by affidavit or otherwise, to substantiate her "belief." Plaintiff failed to advance any basis for the request for the personnel files of Go and Willard.

---

6. Of course, questions of admissibility must be determined by the district court.

7. The request as written seeks the personnel files for 17 employees, but plaintiff has withdrawn its request as to Cadden, Hastings, Boles, and Stewart. *See* Pltf.'s Mot. to Compel, at 3 n. 3.

■ The court finds that evidence that Ammer, Bartosch, Logue, Kelly, and Sutherland had previously been charged with racial discrimination may be admissible at trial to show discriminatory intent in disciplining plaintiff. Defendant is therefore ordered to produce specific portions of their personnel files relating to complaints filed against them between November 30, 1995 and February 14, 1997 alleging racial harassment or racial discrimination and any ensuing discipline arising from such complaints. The motion to compel is denied as to the personnel files of Hofer, Trainer, Ratliff, Alexander, Worley, Culbreath, Go, and Willard.

### B. Plaintiff's Second Set of Interrogatories and Requests for Production of Documents

#### 1. Interrogatories 1 and 5

■ Interrogatory 1 asks defendant to: "Describe in detail the salary and all benefits that were accruing to Plaintiff as (sic) August 1, 1996. In your answer, please describe the value and/or amount of all associated benefits (accrued leave, retirement or pension, health, disability and life insurance, bonuses, etc.) on an hourly, biweekly, or some similar measurable basis." Interrogatory 5 asks defendant to: "Please state *in detail* the knowledge the persons, listed in your Rule 26 disclosure, possess or are likely to possess relevant to this lawsuit."

In response to Interrogatory 1, defendant asserted that responsive information could be found in the documents produced with defendant's Rule 26 disclosure and documents produced in response to plaintiff's previous requests for production of documents. Further, defendant offered additional responsive documents for inspection and copying at a mutually convenient time and date. In response to Interrogatory 5, defendant explained that its investigation into the case was continuing and directed plaintiff to the descriptions contained in Exhibit A attached to its Rule 26 disclosure as well as other previously produced documents.

■ Rule 33(d) provides an interrogatory may be answered by directing the requesting party to the appropriate documents. The responding party must specify the documents from which the answer may be derived with sufficient detail to permit the requesting party to locate it. Accordingly, defendant is directed to supplement its response by identifying by Bates numbers the documents produced which are responsive to this request. Otherwise, plaintiff's motion is denied.

#### 2. Interrogatories 2–4

■ These three interrogatories ask the defendant to identify all management-level employees in the Memphis Hub since January 1, 1992 who have been accused of making racially derogatory comments (Interrogatory 2), or who have been accused of misconduct during any investigation (Interrogatory 3), or who have been accused of not cooperating during any investigation (Interrogatory 4). Defendant has objected to each of these interrogatories as overbroad. For the reasons set forth in the prior discussion of interrogatories, the court finds that Interrogatories 2–4 are overbroad and should be more narrowly tailored. Accordingly, defendant is directed to respond to these three interrogatories as to managers in Bartosch's area disciplined between November 30, 1995 and February 14, 1997 for making racially derogatory comments, for misconduct during any investigation, or for not cooperating during any investigation.

#### 3. Interrogatory 6

■ Interrogatory 6 asks defendant to: "Please identify any and all managers supervised by Brad Ammer and Henry Bartosch at the time of Plaintiff's termination in August, 1996. Include in your answer the rate of pay of each individual, the pay or step increase, promotions and/or bonuses received by each since August 1, 1996." Defendant objected that this interrogatory was not reasonably calculated to lead to the discovery of admissible evidence because plaintiff had not alleged discrimination in pay, promotion, or bonuses in her lawsuit. Although plaintiff has not filed a failure to promote claim, this interrogatory is relevant as to plaintiff's damages. If plaintiff is able to prove that she was discriminated against in terms of the discipline she received, she then will be enti-

tled to attempt to show damages incurred as a result of that discrimination. One possible way in which plaintiff may have been damaged would be if she were denied promotions or pay raises on the basis of her disciplinary record, or while she was unemployed for seven months during the pendency of her GFTP complaint. Accordingly, plaintiff's motion to compel as to this interrogatory is granted.

#### 4. Requests for Production of Documents 1–3

These requests seek documents from defendant pertaining to plaintiff's compensation, employee benefits, bonuses, and awards received during her employment with defendant. In response to these requests, defendant directed plaintiff to previously produced documents and stated that additional responsive documents were available for inspection and copying. Defendant is ordered to supplement its response by identifying the responsive documents by Bates numbers.

#### 5. Requests for Production of Documents 4–5

In these two discovery requests, plaintiff seeks the complete personnel file of individuals identified in response to Interrogatories 2–4 as well as the complete investigative file of any investigations described in response to those interrogatories. For the same reasons that the court found Interrogatories 2–4 to be overbroad, these two production requests are also overbroad. Defendant is directed to produce only those portions of the personnel files relating to the conduct described in Interrogatories 2–4 and the complete investigation files for the individuals identified in response to those interrogatories as previously limited.

#### 6. Request for Production of Documents 6

This discovery request seeks "Any and all documents which reflect the pay of each individual, the pay or step increase, promotions and/or bonuses received by each individual listed in response to Interrogatory 6 above."

Defendant's objection to this request mirrored its objection to Interrogatory 6. For the reasons expressed by the court in its discussion of Interrogatory 6, defendant is ordered to produce documents responsive to this request.

### C. Attorney–Client Privilege and Work Product

At the time defendant submitted its initial disclosures, it withheld numerous documents from disclosure on the grounds of attorney-client privilege and work product protection[8] and submitted with its initial disclosures a privilege log briefly describing the documents being withheld. The privilege log encompassed approximately 150 categories of documents. After negotiation by the parties concerning some of these documents, defendant has narrowed its attorney-client and work product claims down to 34 categories of documents which are briefly described in defendant's Second Amended Privilege Log. It is these documents which are the subject of dispute in the plaintiff's current motion to compel.

The disputed documents consist exclusively of e-mails, interoffice memos, reports, handwritten notes, and the like concerning defendant's internal investigation into plaintiff's filing of an internal GFTP/EEO complaint and an EEOC complaint after defendant's original decision to terminate her employment. Defendant has submitted five of these documents for in camera inspection to support its position that in-house counsel informed the investigating employees that litigation involving plaintiff was anticipated and that all communications were confidential. Because the court is able to resolve the question of discoverability as to the overwhelming majority of these documents by application of the work product doctrine, the court will analyze it first.

Federal Express's standard procedure for handling a GFTP/EEO complaint is for its Legal Department to direct the investigation with the Personnel Department performing the actual work and reporting information

---

**8.** Under the federal rules, this concept in more properly referred to as protection for trial preparation materials. For simplicity's sake, the court shall use the term "work product."

back to Legal. In this case, plaintiff filed an internal discrimination claim on August 2, 1996. Plaintiff filed an external EEOC charge on August 7, 1996.

 "The work product doctrine 'is distinct from and broader than the attorney-client privilege.'" *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir.1986) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). The party seeking work product protection has the burden of proving that the disputed documents are work product. This protection, codified in Fed.R.Civ.P. 26(b)(3), "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.1997). The work product doctrine protects the integrity of the adversarial process by creating a zone of privacy and protection for the attorney's preparatory work on a case. *See Hickman*, 329 U.S. at 510–11, 67 S.Ct. 385.

 The Sixth Circuit has set out a sequential analysis the court must follow when a claim of work product protection is made. *See Toledo Edison Co. v. G.A. Techs.*, 847 F.2d 335, 339–40 (6th Cir.1988). First, the party requesting the materials must make an initial showing that the information contained therein is relevant to the subject matter of the pending litigation and not otherwise privileged. Next, the party opposing production must demonstrate that the materials were prepared in anticipation of litigation by or for that party's attorney or representative. Then, the burden shifts back to the requesting party to establish a substantial need for the materials and inability to obtain the substantial equivalent of the materials by other means without undue hardship. In no event, however, should the court require the production of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative concerning the litigation. *See id.*

 The work product protection only applies to materials which are "otherwise discoverable." Fed.R.Civ.P. 26(b)(3).

Therefore, if any of the disputed documents are privileged then the party seeking discovery has failed the first step, and the court would not proceed through the remaining steps. For the purpose of discussing work product, the court will assume that these documents are not covered by the attorney-client privilege. Furthermore, because no objection as to relevance has been made by defendant in its privilege log the court will assume that each of the documents sought are relevant. Thus, the court finds that plaintiff has satisfied the first step in the analysis by making its initial showing.

The inquiry now turns to whether the disputed materials were prepared in anticipation of litigation. Defendant maintains that all such materials were prepared in anticipation of litigation. The present case is not the first such case in which Federal Express's assertion of work product protection for all documents created during its internal GFTP/EEO process has been considered. *See Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 514 (D.Minn.1997); *Burnett v. Federal Express Corp.*, Order on Objections to Magistrate Judge's Discovery Order, 92–2614–TUBRO, 93–2795–TUA (Jan. 19, 1995).

 From these cases and the memoranda filed herein, it appears that defendant's standard procedures for investigating and handling its internal GFTP/EEO claims are pursued in every instance as much for adjusting employee relations in the ordinary course of business as for preparing for anticipated litigation. *See Onwuka*, 178 F.R.D. at 514; *Burnett*, 92–2614–TUBRO at 4. Materials prepared in the ordinary course of business are not entitled to work product protection. *See* Fed.R.Civ.P. 26(b)(3) Advisory Committee's Note (1970). Absent additional circumstances, the fact that in every instance defendant's corporate counsel instructs employees involved with the GFTP/EEO investigation that the investigation is being launched in the anticipation of litigation does not ensconce it as work product. On the other hand, once plaintiff announced her intention to move forward under federal discrimination laws by filing a racial discrimination charge with the EEOC on August 7, 1996, the investigatory work carried on by

defendant's employees was done in anticipation of litigation. *See Burnett* at 4. The documents submitted by defendant for *in camera* review support the court's conclusion.

 As to these documents prepared in anticipation of litigation, plaintiff has not shown substantial need for these materials or the inability without undue hardship to obtain the substantial equivalent of these materials. Defendant already has disclosed numerous documents relating to the substance of its internal investigation into the racial harassment complaint brought by Go as well as documents concerning defendant's GFTP/EEO investigation. Additionally, plaintiff has been free to depose those individuals involved in the decision-making process; there has been no showing that any of the relevant witnesses are unavailable. Discovery of work product may be denied if the same information can be obtained by deposition. *See In re International Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir.1982). Accordingly, all the documents contained in defendant's privilege log dated after August 7, 1996 are protected by the work product doctrine and need not be disclosed.

 Documents pre-dating plaintiff's filing of her external EEOC complaint are not entitled to work-product protection as they were produced as a matter of the routine internal investigation by defendant to adjust employee relations. Three categories of documents listed on the amended privilege log fall into this category: (1) Bates Nos. FEC 01074, 01694, and 01711 generated on October 5, 1995 described as an E-mail from Virginia Gandy to Audry Cash re: Shantel Jordan internal complaint; (2) Bates No. FEC 00921–00922 generated on July 18, 1996 and described as E-mail from Dee Cadden to Virginia Gandy re: Paul Go internal EEO complaint; and (3) Bates No. FEC 00417, 00546, 00678, 00847, and 01711 generated on June 19, 1996 described as e-mails from corporate counsel, Greg Richards, to several management-level employees concerning instructions for the internal GFTP/EEO investigation. Unless these documents are protected by the attorney client privilege, they are discoverable.

 The purpose of the attorney-client privilege is to encourage open and unfettered communication between attorney and client. "[I]t is now well settled that private corporations and other organizations may constitute clients for purposes of the attorney-client privilege." *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir.1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). In *Upjohn*, the Court rejected the more narrow "control-group test" and found that the privilege would apply to communications between corporate counsel and corporate employees when the purpose of such communications is to secure legal advice from counsel. *Id.* at 397, 101 S.Ct. 677. The burden is on the party asserting the privilege to show it applies.

 With respect to these three categories of remaining documents, defendant has failed to carry its burden. As to the first two categories, defendant has failed to show the communication was to or from an attorney. Moreover, the communication must have been for the purpose of securing legal advice. The party asserting the privilege must explain how including the attorney in communication was for the purpose of securing legal advice, or provide some specific context for the communication. Defendant has failed to make such a showing as to the last category of documents even though they were clearly authored by in-house counsel. These remaining documents must therefore be produced.

### D. *Deposition of Tom Nottingham*

Plaintiff seeks an order compelling defendant to produce Tom Nottingham for deposition in Memphis. Nottingham is a Regional Personnel Manager with Defendant, and his name appears in conjunction with several documents produced by defendant concerning the internal investigation of the Go complaint and defendant's GFTP/EEO investigation. Defendant originally offered to make Nottingham available for deposition either in Arlington, Virginia or by telephone. Plaintiff argues in her motion that it would be unduly

burdensome to require her to travel to Arlington and states that because plaintiff wishes to question Nottingham regarding a large number of documents a telephonic deposition would be impractical. In response to plaintiff's motion, defendant has agreed to make Nottingham available for deposition in Memphis. Plaintiff states in her reply brief to this court that she will take Nottingham's deposition in Memphis after the resolution of her motion to compel. Thus, this portion of plaintiff's motion to compel is denied as moot.

**E.** *Re-opening the Deposition of Henry Bartosch*

Plaintiff has requested that the court allow it to reopen the deposition of Henry Bartosch, defendant's former Managing Director of Hub Operations, as a result of defendant's production of 500 pages of documents the day after Bartosch was deposed. Prior to the time of Bartosch's deposition, defendant had taken the position that those documents were protected attorney work product. Plaintiff contends that the timing of this release evidences defendant's vexatious intent. Defendant denies any such intent and explains that the delay in disclosure stemmed from defendant's investigation into attorney-client and work product issues. Plaintiff asserts that if she had access to those documents at the time of Bartosch's deposition she would have questioned him concerning the contents. Defendant counters plaintiff's request by arguing that the contents of these documents are not relevant to the proceedings because they deal only with defendant's internal review and ultimate decision to reverse its termination decision. Defendant contends that the GFTP/EEO process is a subsequent remedial measure inadmissible pursuant to the Federal Rules of Evidence. *See* Fed.R.Evid. 407.

Rule 26(a)(1)(B) only requires disclosure of documents "relevant to disputed facts alleged with particularity in the pleadings." Defendant decided, albeit after Bartosch's deposition, that it was obligated under Rule 26(a) to disclose these documents pursuant to the initial disclosure provisions. Defendant would not voluntarily disclose some 500 pages of information pertaining to its internal GFTP/EEO proceedings if it did not think that such documents were relevant for purposes of discovery. As mentioned earlier, the materials need not be admissible but only "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Accordingly, the court is not convinced by defendant's present argument that these documents are not relevant for purposes of discovery.

 Although the re-opening of depositions is disfavored as a general rule, existing case law, as well as common sense, supports allowing redeposal where a party fails to disclose relevant information in its Rule 26(a) disclosure which it later reveals only after an intervening deposition has occurred. *See. e.g., Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690–92 (D.Kan.1996). Accordingly, the court orders that Bartosch's deposition be reopened for the limited purpose of questioning him concerning the subject matter of the documents produced the day after Bartosch was first deposed. This reopened deposition shall be limited to no more than two hours.

**F.** *Sanctions*

 Plaintiff requests as sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure, attorney's fees and reasonable expenses incurred as a result of the motion, expenses incurred as a result of having to redepose Bartosch, and sanctions against defendant for what it deems to be abusive discovery practices. The court does not find that defendant should be sanctioned for any failures to disclose; nor does the court find that plaintiff should receive fees and expenses incurred in filing this motion. Much of the relief requested by the plaintiff in this motion has been denied, and the court does not find that the defendant was resisting plaintiff's discovery requests in bad faith. Further, the court does not find that defendant deliberately misrepresented the roles of Brad Ammer, Dee Cadden, and Tom Nottingham in the decision to terminate plaintiff. Plaintiff was aware of their roles in the decision making process well before defendant's summary judgment motion was filed. Also, defendant's interrogatory answer concerning

Dee Cadden and Tom Nottingham's involvement was not misleading. However, plaintiff is entitled to expenses, including reasonable attorney's fees, associated with having to spend another two hours deposing Bartosch because of defendant's failure to disclose relevant documents until the day after Bartosch's deposition.

## III. CONCLUSION

For the above indicated reasons, plaintiff's motion to compel is granted in part and denied in part. Defendant is ordered to respond to Interrogatories 17, 19, and 20 of plaintiff's first set of discovery requests subject to the temporal and subject-matter limitations delineated by the court and to produce portions of the personnel files of Ammer, Bartosch, Logue, Kelly, and Sutherland. Additionally, defendant is ordered to respond to Interrogatories 2, 3, 4 and 6 and Requests for Production 4, 5, and 6 and to supplement its responses to Interrogatories 1 and 5 and Requests 1, 2, and 3 of plaintiff's second set of discovery requests. Further, defendant is ordered to produce the Bates numbered documents dated October 5, 1995, June 19, 1996, and July 18, 1996 as set forth in its privilege log. All responses are due within five days of the date of this order. Finally, it is ordered that Bartosch be redeposed for no more than two hours limited to the documents produced the day after his original deposition with costs of the two-hour deposition, including reasonable attorney's fees, to be borne by defendant. The remainder of plaintiff's motion is denied.

IT IS SO ORDERED.