KENNEDY, Circuit Judge.
 

 Defendant appeals the order of the District Court granting summary judgment in favor of plaintiff United States in this action to recover an erroneous tax refund. The District Court entered a judgment against the defendant in the amount of $276,079.99 plus statutory interest. Defendant argues on appeal that the District Court erred in granting summary judgment to plaintiff because plaintiff should be equitably estopped from recovering the erroneous refund, defendant was denied the right to full and fair discovery, and defendant’s joint return was invalid. For the reasons set forth below, we AFFIRM the judgment of the District Court.
 

 I.
 

 Defendant Garth Guy and Holly Guy were married in 1972. During the year 1983, the Guys resided in a community property state.
 
 [1]
 
 Defendant was the sole earner of all the income attributable to the Guys during 1983. During this time, the Guys were experiencing marital difficulties and on March 14, 1984, they executed a separation agreement.
 

 On April 16, 1984, Garth and Holly Guy filed an application for an automatic extension of time to file their joint income tax. return for the year 1983. With the joint application, defendant sent a payment of $488,000 representing the 1983 joint income taxes estimated to be owed by Garth and Holly Guy. The source of the funds used to make the payment was income earned by the defendant during this year. When the IRS received the payment, it credited the entire amount to the defendant’s account because his taxpayer identification number appeared first on the application for an extension of time.
 

 In August of 1984, the Guys filed another joint application for additional time in which to file their 1983 tax return. This second joint application was also granted. On October 16,1984, defendant filed a joint income tax return for himself and his wife Holly (for 1983), reporting adjusted gross income of $1,103,020 and total tax liability of $474,508. Defendant signed this return and he also signed Holly’s name with the notation “by G.G., atty in fact.”
 

 Also in October of 1984, Holly Guy submitted what was purported to be a 1040 return for 1983, claiming married-filing-separately status, zero income, and zero tax liability. Included with this return was a typed statement from Holly Guy explaining that she had refused to sign the joint income tax return filed by defendant because she was unable to verify the information it contained. The note further indicated that Holly intended to file a joint return as soon as she could gain access to the necessary books and records.
 

 
 *936
 
 On March 15, 1985, the Superior Court of California, County of Monterey, entered a judgment dissolving the Guy’s marriage. Oh August 15, 1985, defendant filed an amended income tax return for the year 1983 in which he claimed married-filing-separately status. This return reported only one-half the amount of income defendant had reported on the joint return filed in 1984, but claimed credit for the entire $488,000 payment made with the first application for extension. As a result, defendant claimed entitlement to a refund of $248,751.25. With this return, defendant attached a statement explaining that because Holly had “disclaimed his authority” and filed a separate return for 1983, he was filing his own separate return, claiming only one-half the income he earned. Defendant further claimed that he should be credited with the entire $488,000 payment because it was made from his separate property rather than community property of the marriage.
 

 On January 8, 1986, the California Superior Court issued a decision regarding the division of property incident to defendant’s divorce from Holly. In addition to holding the first separation agreement invalid, the court held that defendant was to pay certain amounts to Holly for child support, spousal support, and her share of community property. On July 28, 1987, the court issued another decision amending the January 8th decision. This amended decision held that defendant would pay Holly a certain amount in settlement of all arrearages owing for child support, spousal support, and property division. The decision also contained the following clause:
 

 Garth Guy shall pay and hold Holly Guy harmless from any other debts accumulated by him during the period of the marriage; provided, however, each party shall be responsible for any federal and/or state income tax that may be owed by that party because of any federal and/or state income tax returns filed by that party.
 

 On December 28, 1987, based upon the refund claim made by the defendant in his amended return for 1983, the IRS refunded $276,079.99.
 
 [2]
 
 On December 22, 1989, the United States filed suit against defendant to recover the refund, which the government contended was erroneously made. On October 17, 1990, the government filed a motion for summary judgment. On January 16, 1991, defendant filed a motion to compel discovery, seeking information as to the IRS’s course of conduct, its failure to comply with its own regulations, and the legal basis for the refund. On September 25, 1991, without ruling on the defendant’s motion to compel discovery, the District Court granted the government’s motion for summary judgment. On December 26, 1991, the District Court entered an amended judgment against defendant in the amount of $276,079.99 plus statutory interest from December 28, 1987 (the date of the refund). This appeal followed.
 

 II.
 

 This Court reviews a grant of summary judgment
 
 de novo,
 
 making all reasonable inferences in favor of the non-moving party.
 
 EEOC v. University of Detroit,
 
 904 F.2d 331, 332 (6th Cir.1990). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law.
 
 Celotex Cory. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The inquiry is whether there is sufficient evidence supporting a factual dispute that a judge or jury is required to “resolve the parties’ differing versions of the truth at trial.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting
 
 First National Bank of Arizona v. Cities Service Co.,
 
 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).
 

 
 *937
 
 III.
 

 The defendant argues that the District Court erred in granting summary judgment for the government because-the government should be equitably estopped on all of its claims against the defendant. The traditional elements required to invoke equitable estoppel are a definite misrepresentation by one party, intended to induce some action in reliance, and which does reasonably induce action in reliance by another party to his detriment.
 
 Heckler v. Community Health Services,
 
 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984);
 
 United States v. Varani,
 
 780 F.2d 1296, 1304 (6th Cir.1986). Defendant contends that equitable estoppel applies because his attorney contacted the IRS by letter and by phone to determine whether the IRS intended to take any action regarding his 1983 tax returns. Defendant claims that he received certain oral assurances from the IRS official who responded to his inquiries, namely that “the IRS would never pursue him on this issue,” and that the IRS would not seek to collect any additional funds from him regarding his 1983 tax liability. Further, defendant argues that he changed his financial position in reliance on the IRS’s assurances. Defendant claims that he took into account the tax refund in agreeing to the property settlement with his wife, and that a significant portion of the statutory interest awarded in this case directly results from the IRS’s own delay and repeated assurances that they would take no further action.
 

 A.
 

 It is well established that estoppel cannot be used against the government on the same terms as against private parties.
 
 Office of Personnel Management v. Richmond,
 
 496 U.S. 414, 419, 110 S.Ct. 2465, 2468, 110 L.Ed.2d 387 (1990)
 
 [3]
 
 ;
 
 Heckler,
 
 467 U.S. at 60, 104 S.Ct. at 2224;
 
 United States v. River Coal Co., Inc.,
 
 748 F.2d 1103, 1108 (6th Cir.1984) (ordinarily the United States is not estopped by acts of individual officers and agents);
 
 Housing Authority of Elliott County v. Bergland,
 
 749 F.2d 1184, 1190 (6th Cir.1984) (equitable estoppel generally is not available against the government). At the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel.
 
 Richmond,
 
 496 U.S. at 421, 110 S.Ct. at 2469;
 
 River Coal,
 
 748 F.2d at 1108.
 

 In
 
 Heckler,
 
 the Supreme Court reiterated the general rule “that those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law.”
 
 Heckler,
 
 467 U.S. at 63, 104 S.Ct. at 2225 (protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law). In the case at issue, Treas. Reg. § 1.6013-l(a) supplies the applicable law:
 

 A husband and wife may elect to make a joint return under section 6013(a) even though one of the spouses has no gross income or deductions____
 
 For any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired.
 

 (emphasis added). Since defendant filed a joint return for 1983, he was precluded from thereafter filing a separate return.
 
 [4]
 
 Consequently, the refund defendant received by virtue of this (precluded) separate return was contrary to law, and no advice the taxpayer might have received from the IRS to the contrary could have changed that fact. A party claiming estop-pel must have relied on the government’s conduct “in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the par
 
 *938
 
 ty claiming the estoppel did not know nor should it have known that its adversary’s conduct was misleading.”
 
 Heckler,
 
 467 U.S. at 59, 104 S.Ct. at 2223. In light of the treasury regulations, the defendant cannot be deemed to have
 
 reasonably
 
 relied on any statements the IRS might have made regarding his right to retain the refund erroneously made to him.
 

 In addition, the appropriateness of defendant’s reliance is further undermined because the “assurances” he received from the IRS were oral.
 
 Heckler,
 
 467 U.S. at 65, 104 S.Ct. at 2227. In
 
 Heckler,
 
 the Court stated:
 

 It is not merely the possibility of fraud that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument. Written advice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given to the citizen, and subjects that advice to the possibility of review, criticism, and reexamination. The necessity for ensuring that governmental agents stay within the lawful scope of their authority, and that those who seek public funds act with scrupulous exactitude, argues strongly for the conclusion that an estoppel cannot be erected on the basis of the oral advice____
 

 Id.
 

 In order to assert estoppel against the government, a private party must at least demonstrate that the traditional elements of an estoppel are present.
 
 Id.
 
 at 61, 104 S.Ct. at 2224. Because the defendant’s reliance on the IRS agent’s advice was unreasonable, the government is not equitably estopped from recovering the erroneous refund.
 
 See Richmond,
 
 496 U.S. at 414, 110 S.Ct. at 2466.
 
 [5]
 

 B.
 

 Moreover, applying equitable estoppel against the government in this case would frustrate the purposes of the statutorily granted authority of 26 U.S.C. § 7405(b). Section 7405(b) provides in pertinent part that:
 

 Any portion of a tax imposed by this title, which has been erroneously refunded ... may be recovered by civil action brought in the name of the United States.
 

 By its plain language, this section allows the United States to recover refunds that the IRS makes by mistake.
 
 Beer v. Commissioner,
 
 733 F.2d 435 (6th Cir.),
 
 cert. denied,
 
 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984). Here, the defendant filed a joint return for 1983 and paid $488,-000 to satisfy the couple’s joint tax liabilities Since defendant filed a joint return for 1983, he was thereafter precluded from filing an amended return changing his filing status to married-filing-separately.
 
 See supra.
 
 Therefore, the refund issued to the defendant was “erroneous” for purposes of 26 U.S.C. § 7405(b) in that it was based upon an invalid return.
 

 IV.
 

 Defendant also argues that the District Court erred in granting summary judgment to the government because defendant was denied the right to full and fair discovery. Defendant contends that information as to the IRS’s course of conduct, its failure to comply with its own regulations, and the legal basis for the refund, is necessary for defendant to demonstrate the inequity in the government’s seeking a refund and a substantial amount of interest. “[I]t is well established that the scope of discovery is within the sound discretion of the trial court.”
 
 Criss v. City of Kent,
 
 867 F.2d 259, 261 (6th Cir.1988) (quoting
 
 Chrysler Corp. v. Fedders Corp.,
 
 
 *939
 
 643 F.2d 1229, 1240 (6th Cir.),
 
 cert. denied,
 
 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981)). Thus, discovery matters are reviewed under the abuse of discretion standard.
 
 See id.
 
 Abuse of discretion means that the Appellate Court is left with a “definite and firm conviction that the court below committed a clear error of judgment.”
 
 Taylor v. United States Parole Commission,
 
 734 F.2d 1152, 1155 (6th Cir. 1984) (quoting
 
 Balani v. Immigration and Naturalization Service,
 
 669 F.2d 1157, 1160 (6th Cir.1982)).
 

 The defendant was given an opportunity to submit discovery requests as well as a statement of his version of the facts to the government. However, the government would not respond to any discovery requests pertaining to the question whether the government should be estopped from recovering the refund. The additional discovery defendant sought was aimed at establishing a basis for his equitable estoppel defense, namely, who gave him or his attorneys the oral advice regarding his taxes and why they did so. Since defendant has no estoppel defense, there was no need for this discovery. The District Court did not abuse its discretion in failing to rule on defendant’s discovery request seeking facts relating to a claim of estoppel.
 

 V.
 

 Defendant next argues that the District Court erred in granting summary judgment for the government because the government sought recovery of amounts which were not originally refunded to the defendant. The $276,079.99 figure awarded to the government by the District Court encompassed the $128,527.35 sent directly to the defendant; the $120,000 sent to the California Child Support Enforcement to discharge his liability for child support; and the $27,552:64 credited to the defendant’s account to satisfy a penalty the IRS had imposed against him for his failure to make estimated tax payments for 1983. Defendant contends that the government is not entitled to recover the $27,552.64 credit. However, this tax credit, which was improperly allowed, is in the nature of an erroneous refund and can be recovered under 26 U.S.C. § 7405.
 
 See, e.g., Rushlight Automatic Sprinkler Co. v. United States,
 
 294 F.2d 572 (9th Cir.1961);
 
 Wilkes-Barre Carriage Co. v. Commissioner,
 
 39 T.C. 839, 844 (1963). A suit for an erroneous refund encompasses payments made to creditors on the taxpayer’s behalf, and in this regard, the government stands in the shoes of any other creditor. Accordingly, we find that the IRS is entitled to recover the $27,552.64 that was erroneously credited to defendant’s account.
 

 VI.
 

 Defendant’s final argument is that a material issue of fact exists regarding the validity of the defendant’s joint return because this return was not filed until after Holly Guy had filed a married-filing-separately return. However, Holly Guy clearly intended to file a joint return with the defendant for 1983. Even though she initially disavowed the joint return defendant filed, she did so only because she was unable to verify the accuracy of the financial information reported by the defendant. In submitting a separate 1040 return, Holly attached a statement making it clear that she still intended to file “an amended joint return” with the defendant as soon as she was able to gain access to the necessary records. Moreover, Holly Guy never signed this separate return. It is signed only by her tax preparer. This is further proof that she intended to file a joint return with the defendant. The unsigned 1040 return negates the defendant’s contention that what Holly Guy actually filed was a “return.”
 

 In addition, even though not signed by Holly Guy, the defendant’s October 16, 1984 joint return is valid. As the District Court found:
 

 The rule is clearly established that a return may be found to be joint and both spouses liable for all the reported tax even if one of the spouses did not sign the return or expressly authorize it to be signed for her. The determination of whether a return should be treated as
 
 *940
 
 joint depends upon whether the spouse against whom the joint liability is asserted intended to file a joint return.
 

 Citing
 
 Shea v. Commissioner,
 
 780 F.2d 561, 567 (6th Cir.1986);
 
 Sharwell v. Commissioner,
 
 419 F.2d 1057 (6th Cir.1969). There is no question that defendant intended to file a joint return. Defendant filed two applications for an extension of time in which to file a joint return for himself and his wife. In addition, at the time defendant made the $488,000 payment in connection with the first request for an extension, he intended the payment to cover the couple’s joint tax liabilities for 1983.
 

 The liability with respect to tax reported on a joint return is joint and several; that is, each spouse is liable for the tax due on all of the income reported. 26 U.S.C. § 6013(d)(3);
 
 Shea,
 
 780 F.2d at 564. Therefore, because the defendant was precluded from changing his filing status from joint to married-filing-separately, defendant was jointly and severally liable for the entire amount of the tax. Consequently, defendant was not entitled to a tax refund.
 

 VII.
 

 For the aforementioned reasons, we AFFIRM the order of the District Court granting summary judgment in favor of the United States.
 

 [1]
 

 . Defendant claimed Texas as his legal residence in 1983, while Holly claimed California. The District Court noted that regardless of this dispute, both states are community property states with similar community property laws and, therefore, it is immaterial to this case which' of the states was their legal residence.
 

 [2]
 

 . The IRS mailed a check in the amount of $128,527.35 directly to the defendant and it mailed a check in the amount of $120,000 to the California Office of Child Support Enforcement on defendant’s behalf. This latter check was then forwarded to defendant. The IRS credited defendant with $27,552.64, which amount was applied to a penalty assessed against defendant because of his failure to make estimated payments of tax during 1983.
 

 [3]
 

 . While the Supreme Court refused to adopt a flat rule that estoppel may never lie against the government, they noted that they have reversed every finding of estoppel that they have reviewed. The Court further noted that they have never upheld an estoppel claim against the government for the payment of money.
 

 [4]
 

 . Given the two extensions in this case, the last day on which defendant could have filed an original joint or separate return was October 16, 1984.
 

 [5]
 

 . In
 
 Richmond,
 
 the Supreme Court was faced with the issue whether erroneous oral and written advice given by a government employee to a benefits claimant may give rise to estoppel against the government and so entitle the claimant to a monetary payment not otherwise permitted by law. The Court held that equitable estoppel may not be used against the government by a claimant seeking public funds, that payments from the Federal Treasury are limited to those authorized by statute, and that erroneous advice from a government employee will not give rise to the use of estoppel to effect payments contrary to law. 496 U.S. at 414, 110 S.Ct. at 2466.