**NEW TRIER MORTGAGE CORPORATION,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant.**

No. 1:01 CV 675.

United States District Court, N.D. Ohio, Eastern Division.

May 28, 2002.

Eric Larson Zalud, Robert C. Psaropoulos, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for Plaintiff.

Arthur I. Harris, Office of the United States Attorney, Cleveland, OH, Clare Harrigan, U.S. Department of Housing, Washington, DC, for Defendant.

### MEMORANDUM, OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

### Introduction

The plaintiff, New Trier Mortgage Corporation, has brought this case to challenge the decision of the defendant, the Department of Housing and Urban Development, to place it on a six-month probation from participating in the Multifamily Accelerated Processing program for Federal Housing Administration mortgage insurance. The parties have consented to the jurisdiction of the magistrate judge.[1]

New Trier has filed a motion for temporary restraining order[2] and a motion for preliminary and permanent injunction.[3] The parties have agreed under Federal Rule of Civil Procedure 65(a)(2) to the consolidation of the hearing on the motions for temporary restraining order and preliminary injunction with the trial on the merits.[4] The parties also stipulated that the case should be decided without an

1. ECF # 15.

2. ECF # 5.

3. ECF # 6.

4. ECF # 17.

evidentiary hearing on an agreed to record,[5] and the Court has approved that stipulation.[6] Thereafter HUD filed a motion to dismiss or in the alternative for summary judgment.[7]

The Court held a hearing on the merits of this case on May 15, 2002.[8] At the hearing the parties agreed that the Court should decide this case under Federal Rule of Civil Procedure 52 based on the agreed record and the argument of counsel at the hearing.[9] New Trier[10] and HUD[11] have filed proposed findings of fact and conclusions of law.

For purposes of this case the agreed record consists of the administrative record filed by HUD;[12] the stipulated supplemental materials to the administrative record, which consists of the transcripts of the depositions of three HUD employees and two affidavits;[13] the affidavit of Robert O'Brien of New Trier, originally filed as Exhibit 1 to the factual supplement to the motion for temporary restraining order;[14] and the facts in paragraph 31 of the verified complaint.[15]

This is a challenge to agency action brought under the Administrative Procedure Act, 5 U.S.C. § 704. The overarching issue to be decided by the Court is whether the probation meted out by HUD constitutes action "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity."[16] The Court considers the reso-

lution of two subsidiary issues critical to its decision in this case:

- Due process requires that an agency give fair notice of the conduct that a regulation prohibits before issuing sanctions for violation of that regulation. Here HUD sanctioned New Trier for presenting a mortgage insurance application that involved a prohibited identity of interest. HUD had provided New Trier with training on prohibited identities of interest and had a procedure for resolving questions about potential identities. Under these circumstances, did the sanction violate due process?

- Equitable estoppel will bar an agency from sanctioning a violation of its regulations only if the agency has committed some affirmative misconduct. Here New Trier disclosed the identity of interest for which HUD issued its sanction. HUD employees processing the application for mortgage insurance overlooked this disclosure, and HUD approved the application. Does this inadvertence by HUD employees give rise to an estoppel?

As is fully explained below, the Court concludes that New Trier had fair notice that the transaction involved in the mortgage application at issue contained a prohibited identity of interest because: (1) Through training provided by HUD, New Trier had concerns about such an identity; (2) HUD's procedures provide for a disclosure and discussion of such possible identi-

5. ECF # 25.

6. ECF # 26.

7. ECF # 28.

8. ECF # 32, Transcript of Hearing of May 15, 2002 ("05/15/02 Tr.").

9. *Id.* at 8.

10. ECF # 34.

11. ECF # 33.

12. ECF # 22.

13. ECF # 27.

14. ECF # 13.

15. ECF # 1; 05/15/02 Tr. at 6–7.

16. 5 U.S.C. § 706(2)(A) and (B).

ties before approval of the application; and (3) New Trier disclosed the identity but did not discuss it with HUD. The inadvertence of HUD employees in overlooking the disclosure of the identity during the processing of the loan application is not sufficient to create an estoppel. The decision of the agency must, therefore, be affirmed.

### Findings of Fact

On May 17, 2000, HUD established the Multifamily Accelerated Processing ("MAP") program. The MAP Guide, a HUD publication, sets forth the procedures and requirements for participation in MAP. A complete copy of the current MAP Guide, which indicates changes since the MAP Guide was first issued on May 17, 2000, is available on the Internet at:

> http://www.hud.gov/offices/hsg/mfh/map/
> mapguide/mapguide.pdf

The Court has taken judicial notice of the MAP Guide under Federal Rule of Evidence 201.[17]

MAP is a processing procedure with national standards for approved lenders who want to prepare, process, and submit loan applications for Federal Housing Administration ("FHA") multifamily mortgage insurance.[18] All processing of loans under the MAP program must be done pursuant to the MAP Guide, which includes mortgage insurance program descriptions, mortgagor and lender eligibility requirements, application requirements, HUD underwriting standards for all technical disciplines, and closing requirements.[19]

To participate in the MAP program, a lender must already be an FHA-approved multifamily lender, must apply for and be approved by HUD as a MAP lender, and must comply with the instructions in the MAP Guide. Under MAP, approved lenders prepare FHA processing forms and do the primary underwriting normally done by HUD staff. Lenders who qualify for this program act as a HUD-approved lender, and also act on behalf of HUD as a mortgage insurance underwriter.[20]

The MAP program is an accelerated form of providing mortgage insurance for multifamily loans, in contrast with the Traditional Application Process or "TAP."[21] A lender approved to participate in MAP has a significant competitive advantage over lenders only qualified under the more time-consuming TAP program.[22]

As part of its application for approval to become a MAP lender, New Trier submitted a certification entitled "Identity of Interest," executed by Robert O'Brien on April 26, 2000.[23] This document states:

> New Trier Mortgage Corporation hereby certifies to the U.S. Department of Housing and Urban Development that it fully understands and will abide by the identity of interest guidelines, as set forth in Section 2.5 of the Multifamily Accelerated Processing (MAP) Guide. No financial or family relationship will exist between an officer or partner of the MAP Lender, its principal staff or contract employees working on a particular application and, an officer, Director or partner of the sponsor, the mortgagor, the principal of the mortgagors, the general contractor, subcontractor, or the seller of the land or property.[24]

---

17. 05/15/02 Tr. at 13–14.

18. MAP Guide Section 1.1.

19. MAP Guide Section 1.1.

20. MAP Guide Section 1.4.

21. ECF # 27 at Ex. 1, Deposition of Anita Bowles ("Bowles Depo.") at 7–8.

22. ECF # 13 at Ex. 1, ¶ 4.

23. ECF # 22 at Ex. 12.

24. *Id.*

New Trier was approved to be a MAP lender on May 30, 2000.[25]

On October 23, 2000, New Trier submitted to the Cleveland Area Office of HUD a MAP application for mortgage insurance on a loan to refinance the Pleasant Lake Villa nursing home ("Pleasant Lake") in Parma, Ohio. The New Trier certification submitted with the Pleasant Lake application states:

> I hereby certify that there is no identity of interest between the Lender, New Trier Mortgage Corporation and the Mortgagor, Pleasant Lake Associates, for the project commonly known as Pleasant Lake Villa; nor is there any identify [sic] of interest between the Lender, New Trier Mortgage Corporation, and the lessee, Pleasant Lake Nursing Home, Inc., for the project commonly known as Pleasant Lake Villa.[26]

Anita Bowles, the HUD employee who reviewed New Trier's identity of interest certification as part of the Pleasant Lake MAP application, testified that when she saw the identity of interest certification she did not compare it word-for-word against the language in the MAP guide.[27] Rather, it was her practice to rely on the lender to submit the paperwork in compliance with the MAP guide.[28] Bowles also testified that she considered the language of that certification typical and did not request any change in the language.[29] She admitted that at the time of this application, the first MAP application that she worked on, she was not as familiar with the identity-of-interest provisions of the MAP Guide as she should have been.[30]

Pamela Ashby, Bowles's supervisor, testified that under MAP "we're just to review and not to actually go in to perform our own underwriting, and so because those certifications are in there, we're to accept them as being truthful and accurate." [31]

The closing documents, received by the Cleveland Area Office prior to the closing and final endorsement, included an Exhibit A to the Mortgagor's Certificate of Actual Costs. This "Exhibit A" states:

> [t]he mortgagee [New Trier] has paid to Bruce Daskal, a general partner of the mortgagor [Pleasant Lake], the sum of One Hundred Eighty Thousand Seven Hundred Forty Four Dollars ($180,-744.00) in connection with the organization and processing of the application for project mortgage insurance and in connection with the placement of the loan to Fahnestock & Co., Inc., which fee was fully paid to Bruce Daskal and earned upon initial endorsement.[32]

Robert M. O'Brien, President of New Trier, has acknowledged in writing that, from an early point in time in the Pleasant Lake MAP Application process, New Trier had concerns that the payment to Bruce Daskal, disclosed in the exhibit to the Certificate of Actual Costs, might be an identity of interest prohibited by the MAP Guide:

> At the time of the Pleasant Lake MAP Application filed with the Department, and continuing throughout the time periods when the MAP Application was being processed, the firm commitment was being issued, and the documents for ini-

---

25.   ECF # 22 at Ex. 1.

26.   ECF # 22 at Ex. 13.

27.   ECF # 27 at Ex. 1, Bowles Depo. at 48.

28.   *Id.*

29.   *Id.* at 22–25.

30.   *Id.* at 41.

31.   ECF # 27 at Ex. 2, Pamela Ashby Deposition ("Ashby Depo.") at 28.

32.   ECF # 22 at Ex. 15.

tial/final closing were being prepared, New Trier was uncertain whether the payment of a fee for the services of Mr. Bruce Daskal would constitute an identity of interest between New Trier and a partner of the mortgagor and whether the payment of a fee for services to Mr. Daskal would be prohibited.[33]

The record contains no evidence that New Trier ever discussed with the staff or legal counsel at the processing Hub (in Columbus) or the Program Center (in Cleveland) whether the payment of a fee for services to Mr. Bruce Daskal would constitute an identity of interest prohibited by the MAP Guide. While the record does disclose that New Trier discussed all closing documents, including the Mortgagor's Certificate of Actual Cost, which includes the disclosure of the payment to Daskal in Exhibit A,[34] there is no evidence that New Trier ever discussed whether the payment would constitute an identity of interest with anyone from HUD.

Anita Bowles, the HUD employee who reviewed the final closing documents that contained the disclosure of the payment to Daskal, does not recall seeing Exhibit A to the Cost Certification, which contained the disclosure of the payment to Daskal, during her review of those documents.[35]

The initial/final endorsement of the Pleasant Lake mortgage insurance occurred on December 21, 2000.[36] Following this endorsement, New Trier paid the fee to Daskal referred to in Exhibit A to the Cost Certification.[37]

The MAP Guide does not define the phrase "contract employees working on a particular application" used in Section 2.5.

Bowles testified on deposition that she does not know what a "contract employee" is as that term is used in Section 2.5 of the MAP Guide.

Ashby testified that the phrase "contract employee" as she understands it refers to "[s]omeone who's not an employee of a given agency or organization, but who has been given, I guess, a role of an agent for that organization, but is not salaried by the organization but works on a fee basis." According to Ashby, this understanding "was more a business term of usage."[38]

Dennis Morton, Ashby's supervisor, testified on deposition that his understanding of a contract employee is someone who has a contract to do a specific task.[39]

Prior to the Pleasant Lake MAP loan, O'Brien of New Trier was familiar with the MAP guidelines, including the identity of interest provisions.[40] He understood from training provided by HUD in Jacksonville, Florida, that a contract employee under Section 2.5 referred to appraisers, architects, cost analysts, and persons who prepare PCNA reports.[41]

During the week of August 20, 2001, the Lender Qualifications and Monitoring Division of HUD performed a MAP quality assurance review of New Trier's underwriting practices.[42] The review found that: 1) the identity of interest certification submitted by New Trier on the Pleasant Lake MAP application failed to con-

33. ECF # 22 at Ex. 8, at 1–2.

34. ECF # 1, ¶ 31.

35. ECF # 27 at Ex. 1, Bowles Depo. at 30–31.

36. ECF # 22 at Ex. 1.

37. ECF # 22 at Ex. 8, at 2.

38. ECF # 27 at Ex. 2, Ashby Depo. at 13, 16.

39. ECF # 27 at Ex. 3, Deposition of Dennis Morton ("Morton Depo.") at 18.

40. ECF # 27 at Ex. 4.

41. *Id.*

42. ECF # 22 at Ex. 7.

form to the MAP requirements set out in Sections 2.5 and 2.6L; and 2) a prohibited identity of interest existed between New Trier and Pleasant Lake.[43]

On January 29, 2002, HUD placed New Trier on twelve months probation from filing new applications for mortgage insurance under the MAP program pursuant to Section 2.10.C of the MAP Guide.[44] Pursuant to Section 2.13.A.2 of the MAP Guide, this decision did not affect HUD's continued processing of any applications submitted by New Trier under the MAP program prior to the probation date.

In a letter dated February 1, 2002, in accordance with Section 2.14 of the MAP Guide, New Trier appealed its probationary status and requested a hearing.[45] On February 14, 2002, New Trier's appeal hearing was held. After listening to Mr. O'Brien's presentation at the meeting and considering all of the facts, the Acting Deputy Assistant Secretary denied New Trier's appeal.[46] On April 5, 2002, HUD issued its decision to uphold the sanction for violation of the MAP processing procedures but reduced the term of the probation from one year to six months.[47]

## Conclusions of Law

### 1. Standard of Review

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and the Administrative Procedures Act (APA), 5 U.S.C. § 704. New Trier has exhausted all available administrative remedies prior to bringing suit.

Administrative actions, such as HUD's decision to place New Trier on probation from participation in the MAP program, are subject to review in this Court by virtue of the APA, 5 U.S.C. § 704. Pursuant to this statute, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed; and hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [48]

The parties in this case have stipulated that the proper scope of review is under the APA, 5 U.S.C. §§ 706(2)(A) and (B): "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." [49]

An agency decision will be found "arbitrary and capricious" and set aside if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[50]

Accordingly, the standard of review of agency determinations, such as the one presently at the bar, is a narrow one. Agency action is to be afforded a presumption of regularity, and a reviewing court must not "substitute its judgment for that of the agency." [51] Instead, the Court must

---

**43.** *Id.*

**44.** ECF # 22 at Ex. 9.

**45.** ECF # 22 at Ex. 8.

**46.** ECF # 22 at Exs. 1, 4, 5.

**47.** ECF # 22 at Ex. 4.

**48.** 5 U.S.C. § 706(1) and (2)(A); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

**49.** ECF # 25, ¶ 4.

**50.** *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

**51.** *Overton Park,* 401 U.S. at 415–16, 91 S.Ct. 814.

look for a "rational connection between the facts found and the choice made" and "consider whether the decision was based upon a consideration of the relevant factors and whether there has been a clear error in judgment." [52] Thus, so long as an agency complies with the procedure mandated by the relevant statutes and the record supports the choice made, this Court must afford the agency's decision "substantial deference." [53] As the Supreme Court has stated, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." [54]

**2. New Trier received fair notice and an opportunity to be heard on the matter of the payment to Daskal as a prohibited identity of interest.**

■ As the Court understands New Trier's position, it does not contest HUD's authority to prohibit a payment like the one made to Daskal here as an identity of interest. Rather, New Trier protests that HUD violated due process by issuing a sanction for the payment to Daskal because it did not have fair notice that such payment was a prohibited interest under the MAP Guide.

■ Procedural due process does require fair notice and an opportunity to be heard. [55] Regulations that penalize violators must give full and fair warning of the conduct that is prohibited or required. [56]

As the Sixth Circuit noted in *United States v. Midwest Fireworks Mfg. Co.*, [57] a

regulation is not impermissibly vague for purposes of due process simply because some difficulty exists in determining if a specific case falls within its scope.

> [S]tatutes and regulations will not become impermissibly vague simply because it may be difficult to determine whether marginal cases fall within their scope.... [E]conomic legislation is subject to a less strict vagueness test .... when a manufacturer deliberately goes perilously close to an area of prescribed conduct, it shall take the risk of crossing the line, as only a reasonable degree of certainty is necessary. [58]

In determining the adequacy of notice of violation, the Sixth Circuit has identified several factors for consideration: 1) artful versus inartful drafting of the regulation; 2) common understanding and commercial practice; and 3) confirmation of industry practice by a pattern of administrative enforcement. [59] Applying these legal principles to the facts here, New Trier had full and fair warning that the payment to Daskal was a prohibited identity of interest under Section 2.5 of the Map Guide.

The prohibition on identity of interest at issue in this case arises from Section 2.5 of the MAP Guide, which provides:

> No financial or family relationship is permitted between an officer or partner of the MAP Lender, its principal staff or contract employees working on a particular application and, an officer, Director, or partner of the sponsor, the mortga-

---

**52.** *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856 (citation and quotations omitted).

**53.** *Marsh v. Oregon Nat'l Res. Council,* 490 U.S. 360, 372, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).

**54.** *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

**55.** *Yellow Freight Sys., Inc. v. Martin,* 954 F.2d 353, 357 (6th Cir.1992).

**56.** *Ohio Cast Products, Inc. v. OSHR,* 246 F.3d 791, 799 (6th Cir.2001).

**57.** 248 F.3d 563 (6th Cir.2001).

**58.** *Id.* at 568 (citations and internal quotations omitted).

**59.** *Ohio Cast,* 246 F.3d at 799.

gor, the principal of the mortgagors, the general contractor, subcontractor, or the seller of the land or property. If there is a question about whether or not there is an identity of interest between the Lender and the mortgagor, contractor, and others, the facts should be disclosed and discussed with the staff and legal counsel at the processing Hub or Program Center.

HUD offers two alternative positions as to why the payment made by New Trier to Daskal constitutes a prohibited identity of interest under Section 2.5. First, HUD posits that the payment constitutes a relationship between a principal of the lender, in this case O'Brien who approved the payment, and a principal of the borrower, here Daskal who is the general partner of Pleasant Lake Villa.[60] Second, HUD maintains that an identity exists because Daskal is both a contract employee of the lender, New Trier, and a principal of the borrower, Pleasant Lake Villa.[61]

The letter of Acting Deputy Assistant Secretary Tombar setting forth HUD's decision on New Trier's appeal is the agency decision under review in this case.[62] That letter cites only the second position-that Daskal is both a contract employee of New Trier and a principal of Pleasant Lake Villa.[63] The Court will, therefore, limit its analysis to that position.

In the context of this case, the factors "inartful drafting" and "common understanding and commercial practice," identified by the Sixth Circuit in the *Ohio Cast*

decision,[64] must be considered together. The MAP Guide does not define the term "contract employee." [65] During training of lenders provided by HUD, which O'Brien attended, certain persons commonly involved in loan transactions were identified as contract employees—appraisers, architects, cost analysts, or preparers of PCNA (property inspection reports).[66] It is not clear from the record if reference to these persons during training was meant as an exclusive list or merely as examples.[67]

Nevertheless, it is clear from that reference that "contract employee" as used in Section 2.5 does not mean an "employee" as that term is used in master-servant law.[68] Rather the persons identified during training are customarily independent contractors.[69] The definition, therefore, derives from custom and practice in the lending industry.

If an architect, appraiser, or cost analyst is a "contract employee," then it is reasonable to conclude that a person who contracts with the lender to provide services as a mortgage broker and application processor, as Daskal did here, would be considered a "contract employee" also. In any event, after receiving the training, O'Brien and New Trier were "uncertain whether the payment of a fee for services to Mr. Daskal would constitute an identity of interest ... and whether [it] would be prohibited." [70] Obviously, therefore, New Trier had enough notice to identify the payment as a potential prohibited identity of interest.[71]

---

60. 05/15/02 Tr. at 42.

61. *Id.* at 51–53.

62. *Id.* at 82.

63. ECF # 22 at Ex. 3, at 3.

64. 246 F.3d at 799.

65. 05/15/02 Tr. at 51.

66. ECF # 27 at Ex. 4, ¶ 6.

67. 05/15/02 Tr. at 64–65.

68. *Id.* at 55, 62.

69. *Id.* at 55.

70. ECF # 22 at Ex. 8, at 1–2.

71. 05/15/02 Tr. at 65–66.

HUD did not leave New Trier without recourse for this concern and at risk to take a guess as to whether the payment would be a problem. Section 2.5 of the MAP Guide expressly provides that "[i]f there is a question about whether or not there is an identity of interest between the Lender and the mortgagor, contractor, and others, the facts should be disclosed and discussed with the staff and legal counsel at the processing Hub or Program Center." [72] This constitutes a clear opportunity to be heard on any question about an identity of interest that may exist before the application proceeds to endorsement.

Although New Trier discussed the closing documents that included the disclosure of the payment with HUD employees,[73] there is no evidence that it discussed the payment of the fee to Daskal as a possible identity of interest with them.[74] Rather the evidence is to the contrary. Anita Bowles, who did most of the detail work on the loan application, does not recall seeing the disclosure as part of the closing documents.[75] Nor does her supervisor, Pamela Ashby.[76] Ashby testified that if a concern had come to her attention about an identity of interest that could not be resolved in the Cleveland office, then she would have consulted Washington.[77] The Court must conclude from the record that New Trier did not avail itself of the discussion to resolve concerns about identity of interest called for by the MAP Guide.

In light of the notice received by O'Brien during training of the persons who would qualify as contract employees under Section 2.5, the custom and practice in the industry that such persons are usually independent contractors rather than employees, and the procedures for resolving any concerns over identity of interest provided by the MAP Guide, HUD's failure to define "contract employee" in the MAP Guide does not constitute inartful drafting sufficient to deny due process. New Trier had sufficient notice to suspect an identity of interest to the point that it disclosed the payment to Daskal in the closing documents. The MAP Guide provided New Trier with the opportunity to have its concern addressed and resolved before the loan closed and it made the payment to Daskal.

Contrary to New Trier's argument, this is not a case where a pattern of administrative enforcement gave a meaning to the regulation at issue different from the one adopted by the agency in this case. Acting Deputy Assistant Secretary Tombar's letter conveying HUD's decision on the appeal does make reference to "the long-standing but incorrect practice in the Cleveland office of permitting this type of arrangement." [78] Both Bowles and Ashby deny having ever seen such an arrangement in any HUD application prior to the one at issue.[79] Nevertheless, New Trier did not rely on any such practice in this case. O'Brien's two affidavits do not claim such reliance.[80] Further, O'Brien admits to having concern that the payment to Daskal would create an identity of interest as early as the time of the application's filing in October of 2001.[81] This concern

72. ECF # 22 at Ex. 10.

73. ECF # 1, ¶ 31.

74. 05/15/02 Tr. at 70, 73.

75. ECF # 27 at Ex. 1, Bowles Depo. at 30–31, 36.

76. *Id.* at Ex. 2, Ashby Depo. at 19–22.

77. *Id.,* Ashby Depo. at 24–25, 29.

78. ECF # 22 at Ex. 3, at 4.

79. ECF # 27 at Ex. 1, Bowles Depo. at 39–40; Ex. 2, Ashby Depo. at 24–25.

80. ECF # 13 at Ex. 1; ECF # 27 at Ex. 4.

81. ECF # 22 at Ex. 8, at 1–2.

prompted the disclosure in the closing documents. Had a pattern of administrative enforcement existed that had excluded payments like the one made to Daskal from treatment as identity of interests, New Trier would have had no concern about the payment here and would have made no disclosure. No deprivation of due process occurred here.

### 3. HUD's conduct in processing the Pleasant Lake MAP application does not estop it from sanctioning New Trier for a prohibited identity of interest.

■ New Trier has asserted a claim that HUD's conduct in processing the Pleasant Lake MAP application estops it from issuing sanctions for the payment to Daskal.

■ The standard for enforcing estoppel against the federal government is high. Estoppel is not available against the government on the same terms as against private parties.[82] Ordinarily the acts of individual officers and agents of the government do not give rise to estoppel.[83] As the Sixth Circuit observed in *United States v. Guy,* "at a very minimum some affirmative misconduct by a government agent is required as a basis for estoppel."[84] A party attempting to estop the government has a heavy burden.[85]

New Trier has not met that burden here. The record does evidence that New Trier disclosed the payment to Daskal in the closing documents and that Bowles, the person with the responsibility for reviewing those documents, overlooked that disclosure.[86] Bowles admitted that she was not as familiar with the identity of interest requirements of the MAP Guide as she should have been.[87] This omission on Bowles's part and the approvals given to the application by her supervisors based on her review of the documents do not constitute affirmative conduct on the part of HUD officials legally sufficient to create an estoppel. This conclusion is reinforced by New Trier's failure to resort to the procedures for discussing concerns over a possible identity of interest with HUD officials under the procedure provided for in Section 2.5 of the MAP Guide.

### 4. The sanction of a six-month probation is not arbitrary and capricious or an abuse of discretion.

New Trier argues that "the punishment does not fit the crime" and that the Court should reduce the sanction to "time served."[88]

As an initial matter, the MAP Guide clearly provides the authority to impose the sanction given here. Section 2.10C of the Guide authorizes probation for inadequate underwriting "which does not seriously affect HUD's risk of loss." Under that section, the probation may be limited by time or conditioned upon meeting certain requirements. This same authority is restated in Section 2.12A. Section 2.12B expressly provides for probation upon review of loans already committed "when review of pre-application documents or firm commitment documentation indicates

---

**82.** *United States v. Guy,* 978 F.2d 934, 937 (6th Cir.1992).

**83.** *Id.*

**84.** *Id.*

**85.** *Fisher v. Peters,* 249 F.3d 433, 444 (6th Cir.2001).

**86.** ECF # 27 at Ex. 1, Bowles Depo. at 30–31, 36, 49.

**87.** *Id.,* Bowles Depo. at 41.

**88.** 05/15/02 Tr. at 78.

reasons for serious concern that does not adversely affect HUD's risk."

Under these sections the probation was appropriate because the effectiveness of the accelerated MAP application process depends upon the reliability of approved lenders in submitting applications that comply with all of the requirements of the MAP Guide. This application included an identity of interest prohibited by the Guide. The application, therefore, raised a serious concern about inadequate underwriting on New Trier's part.

The prohibited identity of interest alone justified the sanction imposed. Although not necessary to the decision in this case, the Court will nevertheless address HUD's argument that New Trier's certificate of identity of interest submitted with the application in October of 2001 violated the requirements of Section 2.6L of the Guide. HUD maintains that this violation, independent of the identity of interest created by the Daskal payment, supports the probation.[89]

Section 2.6L of the Guide provides that an approved MAP Lender must include a certificate of identity of interest as part of each application.

> Certification by the Lender that it will certify with **each preapplication and application for mortgage insurance** that it is in compliance with the identity of interest provisions in the MAP Guide which will provide that, "No financial or family relationship is permitted between an officer, director or partner of the MAP lender, its principal staff or contract employees working on a particularly [sic] application and an officer, director or partner of the sponsor, the

mortgagor, the principals of the mortgagor, the general contractor, subcontractors or seller of the land or property." [90] New Trier correctly points out that Section 2.6 addresses the requirements for approval of a lender to participate in the MAP program.[91] Section 2.6L, however, does expressly address the content of the certification that must accompany every application and specifically mandates what that certificate must state.

New Trier does not dispute that the certificate submitted with the Pleasant Lake application did not contain the specific language set out in Section 2.6L.[92] It argues, however, that the certificate does not violate the MAP Guide for two reasons. First, by use of the words "identity of interest" in the certificate, it incorporates by reference the definition of that phrase as used in Section 2.5.[93] Second, the application complied with the certification requirements of the MAP Guide because Section 11.1C3 of the MAP Guide provides that submission of the firm commitment package constitutes a certification that "the forms/reports/reviews were prepared in the manner required by the guide and the forms/reports/reviews are complete and accurate." [94]

As for the first argument, the language of the certification submitted that appears after the phrase "identity of interest" qualifies it by limiting the certification to the specific relationships set out therein. Absent from those relationships is one between a contract employee working on the application and a partner of the mortgagor. This is the very relationship created by the payment to Daskal at issue here. Mere use of the phrase "identity of inter-

**89.** *Id.* at 26–27.

**90.** MAP Guide Section 2.6L (emphasis added).

**91.** *Id.* at 30.

**92.** *Id.* at 31.

**93.** *Id.*

**94.** *Id.* at 32–33.

est" in this certification, therefore, does not serve to incorporate by reference all of the relationships prohibited by Section 2.5.

Nor does the certification created by the submission of the package suffice to overcome deficiencies in specific certifications required by the MAP Guide. If such were the case, the specific certifications like the one required by Section 2.6L would be mere surplusage, having no real purpose. The certification provided for by Section 2.6L serves the purpose of providing specific assurance that the approved lender has properly performed the underwriting by avoiding any prohibited identities of interest.

That said, as alluded to by the Court at the hearing in this case,[95] New Trier's technical non-compliance with Section 2.6L in isolation is not the violation that has driven the sanction imposed in this case. Had New Trier submitted a faulty certificate of identity of interest, but in fact no prohibited identity of interest existed in this transaction, it is doubtful that HUD would have imposed a probation, or at least a probation six-months in duration. That probation appears to come in response to the defective certification coupled with the identity of interest that did occur.

New Trier's position that it contemplated no payment to Daskal at the time it submitted the certification in October of 2001, and that the payment was first discussed after HUD's endorsement of the loan,[96] lacks credibility. O'Brien has stat-ed in writing that New Trier had concerns that the payment to Daskal might be a prohibited identity of interest existed "[a]t time of the Pleasant Lake MAP Application was filed [sic] with the Department...."[97] Further that payment was disclosed with the Certificate of Actual Cost before HUD endorsed the loan.[98] The faulty certificate and the identity of interest created by the payment are related.

New Trier correctly states that this Court does have the authority under certain circumstances to modify or set aside a penalty imposed by an agency for violation of its regulations.[99] It may do so, however, only if the penalty is unwarranted in law or unjustified in fact.[100] Otherwise the fashioning of an appropriate and reasonable remedy is for the agency, not the Court.[101] The Court must conclude here that HUD's decision to place New Trier on probation for six months falls within that allowable zone of choice in which the Court cannot interfere.[102]

Having so ruled, the Court has taken note of the opinions of the HUD employees in the Cleveland office deposed in this case that New Trier is one of the most conscientious and capable lenders that they have worked with.[103] Having received vindication for its interpretation of the MAP Guide and affirmation of its authority to sanction identity of interest violations through the decision in this case, HUD may well want to reconsider whether

95. *Id.* at 25–28.

96. ECF # 27 at Ex. 4, ¶¶ 3–4.

97. ECF # 22 at Ex. 8, at 1–2.

98. *Id.* at Ex. 15.

99. *Morgan v. Sec'y of Housing and Urban Dev.,* 985 F.2d 1451, 1460 (10th Cir.1993).

100. *Id.*

101. *Butz v. Glover Livestock Commission Co., Inc.,* 411 U.S. 182, 188–89, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973).

102. *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001).

103. ECF # 27 at Ex. 1, Bowles Depo. at 10–11; Ex. 2, Ashby Depo. at 6; Ex. 3, Morton Depo. at 5–6.

continuation of the probation for the full six-month term will best serve the interests of the MAP program and those that the program serves.

### Summary of Decision

Based on the foregoing findings of fact and conclusions of law, HUD's decision to place New Trier on a six-month probation is not arbitrary or capricious, an abuse of discretion, or contrary to law or constitutional right. That decision is, therefore, affirmed. New Trier's amended complaint is dismissed.

IT IS SO ORDERED.