T.C. Summary Opinion 2003-112

UNITED STATES TAX COURT

JOSEF LAH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MARIE LAH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15965-02S, 15966-02S.      Filed August 11, 2003.

Josef Lah, pro se in docket No. 15965-02S.

Marie Lah, pro se in docket No. 15966-02S.

<u>Donza M. Poole</u>, for respondent.


HAINES, <u>Judge</u>:  These consolidated cases were heard pursuant to section 7463 in effect at the time the petition was filed.[1]

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code for the relevant year.  Amounts are rounded to the nearest dollar.

The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.

Respondent sent separately to petitioner Josef Lah (Mr. Lah) and petitioner Marie Lah (Mrs. Lah) (collectively, petitioners) a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[2]  The issue for decision is whether respondent may proceed with the proposed collection activities relating to 1990, 1991, 1992, and 1993 (years in issue).

### Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time they filed the petitions, petitioners resided in Chardon, Ohio.

Petitioners filed a chapter 11 bankruptcy petition on November 25, 1985.  The case was subsequently converted to a chapter 7 proceeding.

On March 5, 1986, respondent assessed a section 6672 trust fund recovery penalty (TFRP) against each petitioner of more than $40,000.[3]  The TFRP resulted from the failure to withhold and pay over income and Federal Insurance Contribution Act taxes for

---

[2]  Petitioners' cases were consolidated for purposes of trial, briefing, and opinion.

[3]  Respondent assessed $43,652 against Mr. Lah and $45,485 against Mrs. Lah.

Swiss Haus, Inc. for the quarter ending December 31, 1982, to the quarter ending June 30, 1984. See sec. 6672.

In December 1990, the U.S. Bankruptcy Court for the Northern District of Ohio, Eastern Division, entered an order requiring the chapter 7 trustee to pay certain administrative claimants a dividend, including $12,802 to respondent on its claim for administrative taxes incurred by petitioners' bankruptcy estate during the chapter 11 phase of the case. Further, the TFRP liabilities were found not to be fully dischargeable in bankruptcy. See 11 U.S.C. sec. 523(a)(1)(A) (2000).

Petitioners filed their 1990, 1991, and 1992 tax returns with the filing status of married filing jointly and did not send in payments for the balances due with these returns. Mr. Lah filed his 1993 tax return with the filing status of married filing separately. Mr. Lah did not send in a payment for the balance due with his 1993 tax return.

Prior to September 1996, petitioners sent in various partial payments to be applied to the income tax liabilities for the years in issue. Petitioners would designate each payment to the tax year that they wanted the payment to apply. During this period, respondent would honor petitioners' designations and apply the payments to the tax years specified.

On July 12, 1996, petitioners entered into an installment agreement with respondent that included the TFRP liabilities and

the income tax liabilities for the years in issue.  Respondent sent petitioners a letter confirming the installment agreement, which was silent as to whether petitioners could designate the payments to a certain year's liabilities under the agreement.

On August 12, 1996, petitioners sent respondent a payment under the installment agreement for $1,000 and stated in an attached letter:

> The Installment Payment for August, please apply it to 1993/[sic]
>
> The 1989 & 1984 assessments are disputed, because we owed 0 for 1989.
>
> The 1984 taxes known as 6672, have no explanation of what they [are] from the Internal Revenue.
>
> WE have written for on [sic] explanation.

On September 26, 1996, respondent sent petitioners a response (the September 26, 1996, letter) stating: "Since payments are applied in the best interest of the government, we are unable to transfer your $1,000 payment, dated August 12, 1996 as requested."  After receipt of this letter, petitioners no longer designated each payment under the installment agreement. Petitioners made payments of $1,000 under the installment agreement monthly from September 26, 1996, to March 1, 1998. Respondent requested in each monthly payment notice attached to the payment voucher that petitioners include the payment voucher, which referred to "CIVPEN 06-30-84", with each payment and write on each check "CIVPEN 06-30-84".  Although petitioners refused to

write "CIVPEN" on each payment because they disputed the TFRP liabilities, they did include respondent's payment voucher with each payment. Respondent applied these payments to the TFRP liabilities.[4]

On August 28, 1998, Mr. Lah attended an IRS problem-solving day in which he argued that his income tax liabilities for the years in issue should be abated because the payments made pursuant to the installment agreement were intended to pay off these income tax liabilities. The IRS revenue agent reviewed the payments made by petitioners and ensured that all checks designated for application to the income tax liabilities for the years in issue were applied, including the August 12, 1996, payment.

On October 26, 1998, petitioners filed a Form 843, Claim for Refund and Request for Abatement, for a refund of the payments made pursuant to the installment agreement that respondent applied to the TFRP liabilities. Respondent disallowed this claim.

On August 24, 2001, respondent sent a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for the years in issue. The taxes owed with penalties and interest, as set forth

---

[4] As a result of the bankruptcy proceeding, the statute of limitations period to collect the TFRP liabilities expired on Oct. 26, 1998, for Mr. Lah, and Dec. 7, 1998, for Mrs. Lah. See sec. 6503(h) (suspending the running of the period of limitations during the period of bankruptcy).

in the final notice, were $11,035, $4,540, $5,264, and $2,798, for 1990, 1991, 1992, and 1993, respectively. A hearing was held on January 3, 2002. Subsequently, respondent sent each petitioner a notice of determination for the years in issue.[5] Respondent determined that the proposed levy action was sustained because petitioners failed to show that they were entitled to any additional credits or payments, and petitioners were not willing to discuss any alternatives to the proposed levy action. Respondent explained:

> The Service will not grant an installment agreement unless the agreement includes all delinquent tax liabilities. The Service will apply all payments on an agreement in the best interest of the United States. Generally, payments are applied to the tax period with the earliest collection statute expiration date. The trust fund recovery penalty assessment had the earliest collection statute date. Payments were applied to the trust fund recovery penalty first.

> \* \* \* \* \* \* \*

> The Settlement Officer offered you an opportunity to produce verification of any other designated payments for consideration for transfer. You did not provide any additional canceled checks designated to specific tax periods.

On October 4, 2002, petitioners each filed a Petition for Lien or Levy Action Under Code Section 6320(c) or 6330(d) for the years in issue.

---

[5] Respondent also included taxable years 1997 and 1999 in the Final Notice of Intent to Levy and Notice of Your Right to a Hearing and in Mr. Lah's notice of determination, but petitioners do not dispute those years.

## Discussion

In general, a taxpayer making a voluntary payment has the right to direct its application to whatever tax liability he chooses.[6]  <u>Muntwyler v. United States</u>, 703 F.2d 1030, 1032 (7th Cir. 1983); <u>O'Dell v. United States</u>, 326 F.2d 451, 456 (10th Cir. 1964); <u>Bierhaalder v. Commissioner</u>, T.C. Memo. 1995-307; cf. Rev. Rul. 73-305, 1973-2 C.B. 43 (if the taxpayer does not provide specific instructions as to the application of the partial payment, the Commissioner will apply the payment to tax, penalty, and interest to the earliest period first).[7]

Petitioners argue that certain payments made under the installment agreement were improperly credited to the TFRP liabilities rather than to their income tax liabilities for the years in issue.  Petitioners allege that they would have continued to designate their payments to their income tax liabilities if they had not received respondent's September 26, 1996, letter.  In effect, petitioners contend that respondent should be equitably estopped from proceeding with collection

---

[6]  The payments made pursuant to the installment agreement herein are voluntary payments.  See <u>Amos v. Commissioner</u>, 47 T.C. 65, 69 (1966).

[7]  Rev. Rul. 73-305, 1973-2 C.B. 43, was superseded by Rev. Proc. 2002-26, 2002-1 C.B. 746, which provides that unless the taxpayer provides specific written directions as to the application of the payment, the Commissioner will apply the payments that "will serve its best interest."

because their income tax liabilities would have been paid off if they had not received respondent's September 26, 1996, letter.

Because the validity of the underlying tax liability, i.e., the amount unpaid after application of voluntary payments, is properly at issue, we review respondent's determination de novo. Landry v. Commissioner, 116 T.C. 60, 62 (2001); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Equitable estoppel is a judicial doctrine that precludes a party from denying the party's own representations which induced another to act to his or her detriment. Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). We have recognized that estoppel is applied against the Commissioner "with the utmost caution and restraint." Id.; Kronish v. Commissioner 90 T.C. 684, 695 (1988); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977).

The taxpayer must establish the following elements before equitable estoppel will be applied against the Government: (1) A false representation or wrongful, misleading silence by the party against whom the estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) the taxpayer's ignorance of the true facts; (4) the taxpayer's reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the

taxpayer from the acts or statements of the one against whom estoppel is claimed. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998). If any one of these elements is not present, equitable estoppel is not appropriate.

As discussed below, we sustain respondent's determinations to proceed with the proposed levy action because equitable estoppel is not appropriate in these cases.

Estoppel requires a finding that the taxpayer relied on the Government's representations and suffered a detriment because of that reliance. Id. Regardless of the designation of the payment, petitioners paid $1,000 per month on tax liabilities that they were legally obligated to pay. Making payments on a legally due tax does not constitute detrimental reliance. Hudock v. Commissioner, 65 T.C. 351, 364 (1975).

Further, each monthly payment voucher enclosed with petitioners' payments listed "CIV PEN 06-30-84", indicating that each payment was going toward the TFRP liabilities. Regardless of whether petitioners disputed the TFRP liabilities, petitioners were aware that each monthly payment was being applied to the TFRP liabilities by their attachment of the designated payment voucher to each payment. See Estate of Baumgardner v. Commissioner, 85 T.C. 445, 460 (1985) (holding that respondent properly allocated payments because the taxpayer received bills

for installment payments that apprised it of the allocations between tax and interest proposed by the Commissioner).

Moreover, respondent's application of petitioners' payments was reasonable.  The letter that confirmed the installment agreement between petitioners and respondent is the executed written installment agreement.[8]  Sec. 301.6159-1(b)(2), Proced. & Admin. Regs.  We found the installment agreement to be silent as to whether petitioners were able to designate the application of the payments to certain years.  As a result, it was reasonable for respondent to apply the payments to the TFRP liabilities first, pursuant to its own procedures.  See Rev. Rul. 73-305, 1973-2 C.B. 43.

Further, the Court of Appeals for the Sixth Circuit, to which this case would be appealable but for section 7463, has held that estoppel against the Government also requires "some affirmative misconduct by a government agent".  United States v. Guy, 978 F.2d 934, 937 (6th Cir. 1992).[9]  The evidence does not

---

[8]  Sec. 301.6159-1(b)(2), Proced. & Admin. Regs. provides, in relevant part:

> (2) Form of installment agreement.  A written installment agreement may take the form of * * * a written confirmation of an agreement entered into by the taxpayer and the director that is mailed or personally delivered to the taxpayer.

[9]  To define "affirmative misconduct", the Court of Appeals for the Sixth Circuit stated that the party claiming equitable estoppel against the Government must establish "'more than mere negligence, delay, inaction, or failure to follow an internal

lead us to believe that respondent's actions rise to the level of "affirmative misconduct".  We sustain respondent's determinations to proceed with collection of the income tax liabilities for the years in issue.

Mrs. Lah also argued in her amended petition that the $12,804 from the bankruptcy proceeding should have been credited to the tax liabilities for the years in issue.  We have found that this amount was paid to respondent for the claim of administrative taxes incurred by petitioners' bankruptcy estate during the chapter 11 proceeding.  This payment was an involuntary payment and is not allowed to be applied as designated by the taxpayer.  Amos v. Commissioner, 47 T.C. 65, 69 (1966).

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we conclude them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be

entered for respondent.

---

agency guideline'", in addition to the traditional elements. Fisher v. Peters, 249 F.3d 433, 444-445 (6th Cir. 2001) (quoting Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Comp. Programs, 976 F.2d 934, 938 (5th Cir. 1992)).